Minnie Warner Mettler et al., Appellants, v. Vespasian Warner et al., Appellees.

1. ADMINISTRATION OF ESTATES—*when purchase by executor illegal.* An executor is a trustee and as such is forbidden to acquire in his own right any part of the trust estate. A purchase by an executor of a portion of the trust property, which purchase is conducted through the intervention of a third person, is fraudulent, and in order to set aside the transaction by which an executor acquired assets of the trust estate, it is not necessary to show that the estate has suffered loss thereby.

2. TRUSTS—*jurisdiction of equity.* Equity has jurisdiction in all

matters relating to trusts, and of the conduct of trustees in their dealings with property held or controlled by them as such trustees, and of the obligations of such trustees respecting the trust property to the beneficiaries of such trusts.

Bill in chancey. Appeal from the Circuit Court of DeWitt county; the Hon. W. G. COCHRAN, Judge, presiding. Heard in this court at the May term, 1909. Reversed and remanded. Opinion filed May 28, 1910.

FRED BALL, INGHAM & INGHAM, HERRICK & HERRICK and UNDERWOOD & SMYSER, for appellants; ARTHUR W. UNDERWOOD of counsel.

HUGH CREA and JOHN FULLER, for appellees, and VESPASIAN WARNER, per se.

MR. PRESIDING JUSTICE BAUME delivered the opinion of the court.

The bill in this case alleges that from 1902, until about December 21, 1905, the defendant, Eleanor M. Magill, and one John Warner, deceased, as co-partners, conducted a general banking business in the city of Clinton, under the firm name of John Warner & Company, with a paid up capital of $50,000, of which John Warner contributed five-sixths and Eleanor M. Magill, one-sixth; that said firm succeeded to an established banking business which had theretofore been conducted for more than forty years by a series of firms, of all of which firms the said John Warner was an active member; that for many years prior to the death of said John Warner the defendant, Vespasian Warner, had acted as the legal adviser of John Warner and of the firm of John Warner & Company; that for at least fifteen years last past the said Vespasian Warner had been the sole personal and confidential counsel and adviser of the defendant, Eleanor M. Magill, and held a general power of attorney authorizing him to transact her business as her attorney in fact; that said Eleanor M. Magill is about seventy years of age, of frail physique and without extended business experience, and has never taken any active share in the conduct of the firm business, but is under

the control and domination of Vespasian Warner to such an extent as to deprive her of capability of independent action concerning business matters; that on December 21, 1905, John Warner died, leaving his last will and testament which was admitted to probate in the county court of DeWitt county at the January term 1906, of which will the defendant, Vespasian Warner, qualified as executor, and has since acted as such, and said estate is still unsettled; that by the terms of the said will the complainants, Minnie Warner Mettler and Arabella Warner Bell, are entitled each to one-fourth of the personal property of which John Warner, their father, died possessed, after payment of debts, and of the widow's claims; that as beneficiaries under the will complainants occupy toward Vespasian Warner, as executor, the position of *cestuis que trustents* and that he is made by law trustee in behalf of complainants; that as such trustee it is and always has been his duty to refrain from dealing in his own interest with all or any assets of the estate of John Warner, deceased, or from obtaining personal advantage from dealing with said assets, including the interest of the estate in the banking firm of John Warner & Company; that said Eleanor M. Magill is likewise by law a trustee of the assets of said firm for the benefit of the estate of John Warner, her deceased co-partner, and is, as such surviving partner, required to so conduct the affairs of said firm and deal with its assets as fully to protect the interest therein of the estate of John Warner, deceased, in which complainants are interested; that in order to carry into execution the fraudulent and corrupt scheme devised by him to secure, without fair compensation and without the consent of complainants, the ownership of the interest of said John Warner in said bank, Vespasian Warner caused Eleanor M. Magill, as surviving partner, to file an inventory of the partnership property in the county court of DeWitt county, and procure the appointment as appraisers of the property, of the defendant Lewis, at the time cashier of the bank, Fred H. Magill, a nephew of Eleanor M. Magill, and Fred I. Cline, at the time a clerk in the employment of the bank; that complainants are informed and believe that with-

out the knowledge of Eleanor M. Magill, and without the
knowledge of any person interested in the estate of John War-
ner, Vespasian Warner on or about April 10, 1906, pretended
to sell the interest belonging to John Warner, deceased, in the
business affairs of the banking firm to the defendant Eleanor
M. Magill, at a price fixed by Vespasian Warner on his own
motion and responsibility, without conference with any other
persons, which price was far below the actual value of said
assets and property, to wit: for the sum of $81,193.60; that
the fair cash value of the interest belonging to John Warner,
deceased, in said assets and property, was at least $100,000
over all liabilities; that in said pretended sale Vespasian
Warner acted as attorney for Eleanor M. Magill, who, as sur-
viving partner, then controlled the property as trustee for the
estate of John Warner, her deceased partner; that said de-
fendant Magill, individually, and nominally for her own bene-
fit, but in fact for Vespasian Warner, purchased the interest
in the trust property belonging to the estate of John Warner,
deceased, of which she was by law trustee; that said proceed-
ings were taken by said Vespasian Warner, without the
knowledge or concurrence of Eleanor M. Magill, and that
she was thereafter compelled by Vespasian Warner to give
her consent thereto; that Vespasian Warner then pretended
to act as executor of the estate of John Warner, deceased,
for the fraudulent and improper purpose of lending to said
pretended sale, made in fact to himself, the appearance of re-
ceiving the approval of the estate of John Warner, deceased,
and of its beneficiaries, though no actual or genuine sale of
said assets or business or interest therein was in fact made,
nor was any actual settlement of the partnership made, either
on April 10, 1906, or at any time since December 21, 1905,
nor was any payment made on April 10, 1906, or since De-
cember 21, 1905, by the defendant Magill, personally or
through Vespasian Warner as her attorney in fact as buyer,
to Vespasian Warner or any other person as seller of said
property; that said simulated and colorable transaction in
fact existed only in the writing of sundry book entries made
or caused to be made by Vespasian Warner, in order to manu-

facture evidence to establish and bolster up said irregular and illegal attempt to transfer title to said assets or some interest therein; and said transaction occurred without the transfer in fact of any cash or valuable thing from any person as buyer to any person as seller of said assets or property or interest therein; that after the making of said pretended sale and before taking steps to secure by concealment and imposition a colorable approval of said transaction by the County Court of DeWitt county, Vespasian Warner reported to Eleanor M. Magill said illegal and void pretense of sale of said property, required her consent thereto and persuaded and induced her to consent that defendant, Vespasian Warner, should become a partner in the banking business with her, and further persuaded and induced her to agree that John Q. Lewis, cashier of said bank, in consideration of his assistance rendered Vespasian Warner in consummating and concealing said fraudulent scheme, should likewise become a partner in said banking firm, and that said Eleanor M. Magill, under the influence of Vespasian Warner, consented to said terms and conditions, and signed the report of said pretended sale, prepared by or under the direction of Vespasian Warner, to said county court of DeWitt county, and that no notice of said sale or of the filing of a report thereof or of any application for its confirmation was given by the defendants or any of them to the complainants or either of them, or to any other person interested in the estate of said John Warner, deceased, or in its assets; but that thereafter, about July 13, 1906, by concealing the facts and circumstances of said pretended sale or transfer and of the interest of Vespasian Warner therein, and by concealing the fraud thereby practiced upon the complainants and upon the estate of John Warner, by Vespasian Warner, an order was procured from said county court approving said sale and report, but without knowledge of any of the fraudulent transactions involved therein; that said proceedings were taken without the knowledge of complainants, who discovered the same by chance, long after the expiration of the term of said county court at which the order of approval was secured;

that in order to prevent complainants from learning of or
suspecting the existence of such corrupt and fraudulent trans-
action defendants have continued to and still do carry on the
business of said banking firm without apparent change of any
sort; that from and after the date of said pretended sale to
Eleanor M. Magill, Vespasian Warner claimed title to the
whole interest of the estate of John Warner, deceased, in
said banking business, except a one-twelfth interest, assigned
to John Q. Lewis, wholly or partly in consideration of his
silence and aid in said corrupt scheme, and that a pretended
payment was made by Eleanor M. Magill to Vespasian War-
ner, as executor, representing supposed proceeds of said pre-
tended sale, but that in fact no money has been paid to said de-
fendant Warner; that said defendants so juggled with the
funds of the estate of John Warner, deceased, held by said
Vespasian Warner, executor, and with the funds owned by de-
positors in the banking firm of John Warner & Company,
and in possession of Eleanor M. Magill as surviving partner,
as to present on the books of account of said executor and said
bank the appearance of an actual payment; but that in fact
no payment has ever been made; that the debts of John War-
ner & Company have not been paid, either wholly or in part;
that by said pretended sale said Vespasian Warner has be-
come the alleged owner, though the transaction solely arranged
by himself, for his own benefit, of the interest of John
Warner, deceased, in the banking firm of John Warner &
Company, or a large part thereof, at a price far below its real
value, to the detriment of complainants as beneficiaries in
the estate of John Warner, deceased, and without their knowl-
edge.

The bill prays that said pretended sale of the property
and assets of the banking firm of John Warner & Co. or the
interest of the estate of John Warner, deceased, therein to the
defendant, Eleanor M. Magill, for the benefit of the defend-
ants Vespasian Warner and John Q. Lewis, by virtue where-
of Vespasian Warner claims a large interest in said bank,
be set aside and declared void; that the approval of said
sale, procured by fraud by Vespasian Warner, in the County

Court of DeWitt county be annulled and vacated; that Eleanor M. Magill, personally and as surviving partner, be required to account for the profits earned by said bank since the death of John Warner and to pay over five-sixths of said profits to said estate and to bear and assume all losses made by said business during said time; that Vespasian Warner be restrained from further dealing with the settlement of the interest of said estate in said banking firm, and that the court, by the master in chancery, or other representative, take charge of and manage the said settlement and protect the interest of the estate of said John Warner therein; that the defendant Eleanor M. Magill, personally and as surviving partner, be required diligently and according to law to wind up the affairs of said bank, realize upon its assets and pay its debts; and that the defendants be restrained from using for their personal advantage the name of John Warner & Company, and conducting under said name a banking business for their own benefit and advantage, and that complainants have such other relief as equity may require. To this bill the defendant Vespasian Warner in his own proper person filed his answer, and in substantially the like phraseology, was filed the joint and several answers of the defendants Vespasian Warner, as executor of the last will and testament of John Warner, deceased, Eleanor M. Magill, personally, and as surviving partner of John Warner & Co., and John Q. Lewis. In and by their said answers said defendants denied the material allegations of the bill, and for further answer allege the facts relative to the transactions involved to be, in substance, as follows: That on December 21, 1905, John Warner and Eleanor M. Magill were co-partners doing a banking business under the firm name and style of John Warner & Co., in Clinton, Illinois, when and where John Warner died testate; that on February 12, 1906, defendant Magill, as surviving partner, filed in the county court of said county a petition representing she was surviving partner of said firm composed of John Warner and said defendant Magill; that said John Warner died on December 21, 1905; that said firm was in existence and doing business at said

date and was the owner of personal property and assets used
in said business, and praying for the appointment of ap-
praisers to appraise the co-partnership property of said firm;
that on February 19, 1906, said county court appointed John
Q. Lewis, Fred H. Magill and Fred I. Cline appraisers to
appraise the personal estate of said co-partnership, and on the
same day they took their oaths and duly appraised said
property; and on February 21, 1906, filed their appraisement
in the county court, which was approved by said court on
April 7, 1906; that on February 21, 1906, defendant Magill,
as surviving partner, filed in said county court her inventory
of the co-partnership property of the late firm; that on Feb-
ruary 27, 1906, said county court ordered all objections there-
to to be filed on or before March 9, 1906, and on May 31,
1906, said inventory was duly approved by said county
court; that on May 12, 1906, defendant Magill filed in said
county court her final report as surviving partner, setting
forth that on April 10, 1906, she has assumed all liabilities
of said firm and paid to defendant Vespasian Warner, as
executor of John Warner, deceased, $81,193.60, and agreed
to collect as much of and as soon as possible the doubtful and
worthless claims in said report itemized, and when collected
to pay five-sixths of the net proceeds thereof to said executor
in full satisfaction of all interest of said John Warner at his
death, and of Vespasian Warner, executor, in the co-partner-
ship business, and asked the court to approve her action; that
on June 30, 1906, it was ordered that all objections to said
final report of defendant Magill be filed in said county court
on or before July 10, 1906, and on July 17, 1906, said county
court approved said final report, and on January 30, 1907,
defendant Vespasian Warner filed his report as executor of
John Warner, from December 27, 1905, to January 27, 1907,
wherein he accounted for and charged himself with $81,-
193.60, received from defendant Magill, as surviving part-
ner, on April 10, 1906; that on February 13, 1907, complain-
ants filed objections to said report and objections to said item
received from defendant Magill; that on December 30, 1907,
said objections were overruled, and said executor's report

approved, and complainants prayed and perfected an appeal to the circuit court of DeWitt county, where the same is now pending and undetermined; that on April 12, 1906, defendants Vespasian Warner, Eleanor M. Magill and John Q. Lewis entered into a co-partnership for the purpose of doing a general banking business in the city of Clinton aforesaid, under the name and style of John Warner & Co., with a capital of $50,000, paid up in cash, whereof Vespasian Warner paid nine-twelfths, Eleanor M. Magill two-twelfths, and John Q. Lewis one-twelfth; that the same was a new co-partnership and distinct from the firm of John Warner & Co. The complainants filed their replications to said answers and the cause was referred to the master in chancery to take proofs and report the same together with his findings thereon. The report of the master in chancery after reciting certain facts as found by him, concluded with a finding that the amount received by Vespasian Warner as executor was the fair and real value of the interest of John Warner in the assets of said co-partnership, and that complainants have not been injured thereby, and recommended that complainants' bill should be dismissed for want of jurisdiction. Objections filed by the complainants to the findings of the master were overruled by him, and upon such objections standing as exceptions to such findings a hearing was had before the chancellor, who overruled all said exceptions, save the exception to the finding of the master that the court was without jurisdiction to hear and determine the cause, which exception was sustained by the chancellor, and a decree entered dismissing complainants' bill for want of equity. To reverse such decree the complainants prosecute this appeal, and the defendants have assigned cross-error upon the action of the chancellor in sustaining complainants' exceptions to the finding of the master upon the question of jurisdiction.

Upon the merits of the case the uncontroverted facts established by the record are substantially as follows: For a period of more than thirty years prior to 1902, a co-partnership known as John Warner & Company had conducted a private bank in the city of Clinton, with a paid up capital

of $50,000. During that time, by reason of the death and withdrawal of several of the partners, the personel of the partnership had undergone various changes, until in 1902, when John Warner owned a five-sixths interest in the business of said co-partnership and the defendant Eleanor M. Magill owned a one-sixth interest therein, and said last named co-partnership so continued until the death of John Warner on December 21, 1905. Following the death of John Warner there was some litigation relating to an antenuptial contract entered into between said John Warner and his widow, Isabella R. Warner, the mother of the complainants in this bill, and the step-mother of Vespasian Warner, the details of which litigation are not necessary to be here recited. By his last will and testament duly admitted to probate John Warner bequeathed to each of the complainants a one-fourth part of his personal estate and named the defendant, Vespasian Warner, as his executor and trustee, and said Vespasian Warner thereafter qualified as such on January 29, 1906. On February 19, 1906, the defendant, Eleanor M. Magill, presented to the county court her petition as surviving partner of John Warner, deceased, for the appointment of appraisers to appraise the copartnership property of the late firm of John Warner & Company, and upon the same day the defendant John Q. Lewis together with Fred H. Magill and F. I. Cline, were appointed by the court as such appraisers. On February 21, 1906, the defendant, Eleanor M. Magill, filed her inventory in said county court of the co-partnership property, wherein the assets of said co-partnership consisting of cash on hand, bills receivable, amount due from banks, amount due on overdrafts, amount of interest earned and unpaid and the value of furniture and fixtures, was fixed at $789,059.48, and the liabilities consisting of deposits and unpaid expenses was fixed at $698,445.11, and wherein the value of the assets over the liabilities was fixed at $90,614.37, and wherein also the amount of doubtful and worthless claims was fixed at $3,340.02. On the same day the appraisers appointed by the court filed their appraisement of said co-

partnership property, which appraisement as to the assets and liabilities of said co-partnership was identical with the inventory filed by the surviving partner. Thereafter, it was ordered by the county court that objections to said inventory should be filed on or before March 8, 1906, and that objections to said appraisement should be filed on or before April 17, 1906, and on May 31, 1906, no objections having been filed thereto, said inventory and appraisement were approved by the court. On April 10, 1906, it was ascertained that the net earnings of the co-partnership business since the death of John Warner amounted to $6,817.95, which amount added to $90,614.37, being the net assets of the co-partnership as fixed by the inventory and appraisement, amounted to $97,432.32 of which amount, upon a partnership accounting, five-sixths or the sum of $81,193.60, represented the interest of the estate of John Warner, and one-sixth or the sum of $16,238.72, represented the interest of Eleanor M. Magill in said co-partnership. On that day the defendant Eleanor M. Magill as surviving partner of John Warner signed two checks drawn on John Warner & Company, as follows: one check payable to her own order for $16,238.72, and one check payable to the order of the defendant Vespasian Warner, executor of John Warner, for $81,193.60. No money corresponding with the amount of said checks or any money whatever was actually transferred thereby, but said checks were passed through the bank by crediting the same upon the books of the bank to the individual accounts of the parties, and charging the same to an account designated "Eleanor M. Magill, survivor." At the time of giving said checks Eleanor M. Magill had a cash credit in said bank of between $10,000 and $12,000. By this transaction the defendant Eleanor M. Magill assumed to become the owner of the entire assets of the bank and to become responsible for all liabilities of the bank. On April 12, 1906, being two days thereafter the defendants Vespasian Warner, Eleanor M. Magill and John Q. Lewis entered into a co-partnership agreement to conduct a general banking business, under the firm name of John Warner & Co., with a paid up capital of

$50,000, nine-twelfths of which was contributed by Vespasian Warner, two-twelfths by Eleanor M. Magill and one-twelfth by John Q. Lewis. On May 12, 1906, the defendant Eleanor M. Magill, filed in the county court what purported to be her final report as surviving partner of John Warner, deceased, and by which she represented to the court that on April 10, 1906, she assumed all liabilities of the co-partnership, and paid to Vespasian Warner, as executor of said John Warner, deceased, $81,193.60 and agreed to collect as much of and as soon as possible certain designated doubtful and worthless claims of said co-partnership amounting to $3,152.02, and as soon as the same was collected to pay five-sixths of the net proceeds thereof to said executor in full satisfaction of all the interests of the estate of John Warner, deceased, in said co-partnership. On June 30, 1906, it was ordered by the court that all objections to said final report be filed on or before July 10 following, and on July 17, following, the court entered an order approving said final report.

On January 30, 1907, Vespasian Warner, as executor, filed his report in the county court wherein he charged himself with $81,193.60 received by him from Eleanor M. Magill, as being in full of the assets of the co-partnership of John Warner & Company. To that item in said report the complainants in this bill filed their objection which objection was overruled by the county court, and from the order overruling said objection said objectors appealed to the circuit court of said county where said appeal is now pending and undetermined.

It is disclosed by a clear preponderance of the evidence in this record that at the time of the transactions here involved the defendant Eleanor M. Magill was about eighty years of age; that she was frail in body and wholly incapable of understanding or appreciating the business in which she was a co-partner, and the various steps which were nominally taken by her in assuming to purchase the five-sixths interest of her deceased co-partner in the co-partnership assets, and her action in assuming the liabilities of such co-

partnership; that for many years prior to the death of John Warner, and during the time the transactions here involved were pending and determined, the defendant, Vespasian Warner, was her attorney in fact and her sole adviser in all matters relating to her business affairs. It is further clearly apparent from the evidence that every detail of the transactions here involved was contrived by Vespasin Warner, and that so far as Mrs. Magill was required to participate therein she was wholly subservient to his will and direction, and signed any papers which were presented to her for signature by him, upon his mere representation that what she was called upon to do in the premises would best subserve her interests. It is admitted by Vespasian Warner that immediately upon the death of his father he conceived the thought of instituting either a national or private bank in Clinton, and the inference is irresistible that he then contemplated the organization of a bank which should be the immediate successor of the banking business, including the assets and good will of John Warner & Company. Vespasian Warner testified that he had no understanding with Mrs. Magill prior to April 12, 1906, being the second day after the alleged transfer to her of all the interests of her deceased partner in the firm business, that he, together with Mrs. Magill and John Q. Lewis, should enter into a new co-partnership under the firm name of John Warner & Company, and that such matter was not considered by the parties until after the transaction of April 10, 1906, was closed. In view of the fact that Mrs. Magill was wholly subservient to the wishes of Vespasian Warner, and by reason of his influence over her was willing to comply with any suggestion from him involving the business in hand, it is not improbable that there was no understanding between Warner and Mrs. Magill, on or prior to April 10, 1906, that a new co-partnership should be formed on April 12, 1906. Warner being fully assured of his ability to induce Mrs. Magill to act according to his directions, there was no occasion for a preliminary understanding. The defendant John Q. Lewis testified that negotiations looking to the formation of a new

co-partnership on April 12, 1906, had been pending for at least three days prior to that date, and upon a consideration of all the evidence in the record there is no escape from the conclusion that the defendant Warner conceived and carried to a successful termination the scheme whereby he became the sole owner of the five-sixths interest belonging to the estate of John Warner in the partnership business. There is no evidence in the record tending to show that he repaid to Mrs. Magill the $81,193.60 which it is claimed she paid to Warner, as executor, for the five-sixths interest in the co-partnership, but the whole transaction in that regard was so accomplished by entries in the books of the co-partnership that no liability was incurred by either of the said parties to the other in the execution of the transaction. We are compelled to hold upon the evidence in this record that the alleged sale by Vespasian Warner, as executor of the last will and testament of John Warner, deceased, of the five-sixths interest of said John Warner, in the co-partnership business of John Warner & Company to the defendant Eleanor M. Magill, was in fact a sale of said interest in said co-partnership to himself personally. A recital in detail of the evidence in the record upon which this holding is predicated would unduly extend this opinion. It is sufficient to say that a most careful examination and consideration of such evidence absolutely forbids any conclusion other than the one above stated. It is uncontroverted that the complainants had no actual notice of the proceedings in the county court relating to the accounting by. the defendant Eleanor M. Magill as surviving partner of the co-partnership business of John Warner & Company, or of the disposition of the interest of John Warner, deceased, in said co-partnership, until December, 1906, being five months after the approval by the county court of what purported to be the final report of Mrs. Magill as surviving partner of John Warner & Company.

It is elementary law that an executor is a trustee and as such is forbidden to acquire in his own right any part of the trust estate. Williams v. Walker, 62 Ill. 517; Lagger v. Mutual Union Loan Ass'n, 146 Ill. 283; Burnes v. Edwards,

163 Ill. 494; Elting v. First Nat. Bank, 173 Ill. 368; Miller v. Rich, 204 Ill. 144; Roberts v. Weimer, 227 Ill. 138. Also that a purchase by an executor of a portion of a trust estate, which purchase is conducted through the intervention of a third person is fraudulent *per se*. Miles v. Wheeler, 43 Ill. Ill. 123; Nelson v. Hayner, 66 Ill. 487. Also that in order to set aside a transaction by which an executor has indirectly acquired assets of the trust estate it is not necessary to show that the estate had suffered loss thereby. Roberts v. Weimer, *supra*.

The defendants do not attempt to controvert the law as thus stated, but content themselves with the statement, first, that it has no application to the facts in the case; and second, that if it has any such application the exigencies of the situation justified a disregard by them of the law. What we have heretofore said constitutes a complete answer to the first of said contentions, and in the absence of any argument save that of mere expediency in support thereof and of any authority therefor, we cannot give our assent to the second contention.

The record discloses an utter disregard by the defendants of the rights of the complainants in the subject-matter of the transactions here involved, and suggests that if the defendants had not ignored the rights of the complainants in the premises this litigation would have been avoided.

The cross error assigned by defendants questions the jurisdiction of a court of equity to hear and determine the issues here involved, upon the ground that complainants have an adequate remedy at law in the county court with respect to all matters relating to the settlement by the surviving partner of the partnership business of John Warner & Company. The report filed in the county court by Eleanor M. Magill as surviving partner, wherein she represented to the court that she had purchased the interest of her deceased partner in the partnership business and had assumed all the liabilities of said co-partnership, was, in view of the facts and circumstances disclosed by the evidence in this case, erroneous and fallacious, in that it failed to disclose the transaction as

it was in fact consummated by and on behalf of the defendant Vespasian Warner, as heretofore shown. During the time which elapsed between the approval by the county court of the said report and the ascertainment by the complainants of the fact that said report was erroneous and fallacious in the respect mentioned, the defendants Vespasian Warner and John Q. Lewis wrongfully claimed to have acquired certain rights which they asserted in the partnership assets and business, with at least the tacit concurrence of the surviving partner Eleanor M. Magill, and the said Eleanor M. Magill personally and as surviving partner thereby became liable to account to the estate of John Warner, deceased, for the conduct of said partnership business during said time, and the time subsequent thereto, until such partnership business should be closed up in the manner provided by statute. The county court was without jurisdiction to afford the complainants an adequate remedy, whereby the rights of all the parties involved might be ascertained and determined, and to order an accounting by said Eleanor M. Magill personally and as surviving partner, of the business of the co-partnership. As neither the defendant, Eleanor M. Magill, in her personal capacity, or as surviving partner, nor the defendant John Q. Lewis, were parties to the hearing upon the report of Vespasian Warner, as executor of the last will and testament of John Warner, deceased, it is plain that as to them the complainants had no remedy in the county court upon a hearing on said executor's report. Courts of equity having general jurisdiction in all matters relating to trusts, and of the conduct of trustees in their dealings with property held or controlled by them as such trustees, and of the obligations of such trustees respecting the trust property to the beneficiaries of such trusts, it must be held that the remedy here invoked by the complainants could only be adequately afforded them in a court of equity.

The decree of the circuit court will be reversed and the cause remanded with directions to said court to enter a decree setting aside the pretended sale of the property and assets of the co-partnership business of John Warner & Com-

pany, and the interest of the estate of John Warner, deceased, in the property and assets of said co-partnership, by the defendant Eleanor M. Magill as surviving partner to herself individually; also vacating the order of the county court of DeWitt county approving of said sale; and requiring the said Eleanor M. Magill, personally and as surviving partner of the firm of John Warner & Company, to render a just and true account of the conduct of said co-partnership business since the death of John Warner, and to pay to the executor of the last will and testament of John Warner, deceased, five-sixths of the profits realized in the conduct of said co-partnership business during said time, over and above the amounts properly and necessarily expended by her in conducting said business; and further, directing said Eleanor M. Magill, as such surviving partner, to proceed with all reasonable diligence in the county court of DeWitt county, to there settle the co-partnership business of John Warner & Company in the manner provided by law.

*Reversed and remanded.*