# Maude Huddleston, Appellee, v. Margaret Henderson, Administratrix, et al., Appellants.

1. ADMINISTRATION OF ESTATES—*administrator as trustee of funds.* An administrator holds the title to the property of an estate in the right of the heirs, and occupies a fiduciary relation to the heirs of the estate.

2. CONTRACTS—*where there is a fiduciary relation.* Transactions between a party and one bearing a fiduciary relation to him are *prima facie* voidable, and the burden of proof, the fiduciary relation being established, is upon the one receiving the benefit to show an absence of undue influence.

3. RELEASE—*by cestui que trust.* A release by a *cestui que trust*

is not binding unless he is first made fully acquainted with his rights and the nature and full extent of the liability of the trustee.

4. RELEASE—*when obtained by fraud.* Any concealment, misrepresentation or other fraudulent conduct on the part of the trustee will vitiate a release obtained from the *cestui que trust,* and the burden of proof is on the trustee to vindicate the transaction.

5. FRAUD—*where evidence is sufficient to sustain allegations of.* In a bill to set aside a release on the ground that it was obtained by fraud, where defendant, administratrix of the estate of her deceased illegitimate son, settled an action to recover damages for his death and with her attorney induced complainant, an illegitimate daughter, to sign a release representing it to be a will; there is sufficient evidence to sustain the allegations of fraud.

6. DEATH—*who entitled to damages.* In a suit at law by an administrator on behalf of collateral relatives to recover damages for death, there can be no recovery unless it is proved that the collateral relatives received pecuniary assistance.

7. DESCENT—*where sister of illegitimate birth is entitled to half the estate of her brother.* Under R. S. c. 39, § 2, where an administratrix of the estate of her deceased illegitimate son, who left no descendant recovers damages for his death, complainant, an illegitimate daughter, who is the only surviving descendant of the mother of deceased, is entitled to one-half of the money after probate costs are paid, and it is not necessary to prove that she received pecuniary assistance or was dependent on the deceased.

8. EQUITY—*jurisdiction to settle estates.* Where a court of equity has acquired jurisdiction for the purpose of setting aside a release obtained by an administratrix from an heir by fraud, it may in the interest of justice and to avoid a multiplicity of suits, assume full jurisdiction of the estate and retain jurisdiction until complete justice is done between the parties in respect to the subject-matter of the litigation.

9. EQUITY—*when prayer for general relief is sufficient to sustain decree.* On a bill to set aside a release obtained by an administratrix from an heir by fraud, a prayer for general relief is sufficient to sustain a decree ordering that half the money remaining after payment of costs be paid to complainant.

10. ADMINISTRATION OF ESTATES—*when administratrix is not entitled to commissions.* On a bill to set aside a release on the ground that it was obtained by fraud, where defendant, administratrix of her deceased illegitimate son, settled an action to recover damages for his death and with her attorney induced complainant, an illegitimate daughter, to sign a release obtained by an administratrix from an heir by fraud and to defendant having had the use of the money is not entitled to commissions.

11. ADMINISTRATION OF ESTATES—*when administrator is not entitled to compensation.* An administrator who has been guilty of wilful default or misconduct in the administration of the estate may be refused compensation.

Vol. CLXXXI 12.

12. INJUNCTIONS—*where decree is erroneous.* On a bill to set aside a release, giving her a check and representing the release to be a will, restrain defendants from conveying certain real estate or paying out money a portion of the decree which continues the injunction "until the further order of the court" is erroneous.

Appeal from the Circuit Court of Sangamon county; the HON. JAMES A. CREIGHTON, Judge, presiding. Heard in this court at the October term, 1912. Affirmed in part, reversed in part, and remanded with directions. Opinion filed May 19, 1913.

**Statement by the Court.** This is a bill in equity filed May 6, 1912, by Maude Huddleston against Margaret Henderson, administratrix of the estate of George Ryan, deceased, Margaret Henderson and the Farmers' National Bank of Springfield, in the circuit court of Sangamon county, to cancel and set aside a certain release and to restrain the defendant, Margaret Henderson, from conveying certain real estate and the Farmers' National Bank from paying out certain moneys on the check of Margaret Henderson, administratrix, or Margaret Henderson.

The bill alleges that on March 10, 1910, Margaret Henderson, was appointed administratrix of the estate of George Ryan, deceased, by the probate court of Sangamon county and as such administratrix gave bond in the sum of $200 with T. J. Condon as surety; that complainant is a daughter of said Margaret Henderson and a sister of George Ryan, deceased; that on April 21, 1910, said administratrix instituted suit in the circuit court of Sangamon county against the Chicago and Alton Railroad Company to recover damages for the death of said Ryan, alleged to have been caused by the negligence of said Railroad Company; that on May 7, 1911, the said suit was settled by the Railroad Company paying the administratrix the sum of $2,900 and that no settlement of the estate has yet been made.

The bill further alleges, on information and belief, that complainant has signed a certain release of her

claim as one of the heirs of said Ryan, deceased, and states the facts to be that on August 11, 1911, Mrs. Henderson and her attorney, T. J. Condon, came to the residence of Mrs. Crabbe, where complainant was working, and that Condon there wrote in complainant's presence a paper and read it to her as the will of Mrs. Henderson and asked complainant to sign the same, and pointed to where complainant was to sign and she did sign the same believing it to be the will of Mrs. Henderson; that Mrs. Henderson and her attorney now claim the paper signed is a release and discharge of Mrs. Henderson both as administratrix and personally from liability to complainant on account of any money or property received by her as administratrix.

It is alleged that complainant relied on the reading of said instrument by said Condon to be the will of Mrs. Henderson, and if she signed any other instrument than the will of Mrs. Henderson then her signature was procured through fraud, misrepresentation and circumvention; that Condon now claims to have said paper signed by complainant and claims the same to be a release, but neither complainant nor her attorney have been able to ascertain what it is although her attorney had requested of Condon that the same be shown to him, but Condon claims the same is a release and discharge of Mrs. Henderson as administratrix.

It is alleged that Mrs. Henderson has used $1,375 of the $2,900 so received by her, in the purchase of a certain lot and has deposited other of the money so received by her in the Farmers' National Bank. The bill prays for an injunction restraining the alienation of said lot and the paying out any money now on deposit in said bank on the check of Margaret Henderson or Margaret Henderson, administratrix, and for the cancellation of said release, and for such other and further relief as to said court shall seem meet. The

bill is verified and does not waive the oath to the answer. A temporary injunction was issued as prayed.

The answer of Margaret Henderson, administratrix, and individually, admits the relationship as alleged; the death of Ryan, the appointment of defendant as administratrix; states the making of a contract with certain attorneys to bring suit against the Railroad Company on a contingent fee; that said suit was brought by her as administratrix and that she individually was the next of kin and the only person entitled to the money in the suit; that said suit was compromised for $2,900 and she received $2,100 after paying her attorneys their fees and disbursements; admits the estate is unsettled; admits complainant signed a release, but denies that it was obtained through fraud or circumvention. The answer states that this defendant is a married woman, having been married December 24, 1903; that in her early years, about thirty years ago, she was indiscreet and gave birth to George Ryan without having been married; that her husband knew this fact, and it provoked him; that four or five years after the birth of Ryan she gave birth to complainant, who was also born out of the marriage state, but the fact that complainant was an illegitimate child was unknown to her husband and she feared, if he should hear of that fact, he would leave her; that in August, 1911, complainant came to defendant and stated she had heard there was some insurance money with defendant for her; that defendant stated there was no insurance money and that the only money she had received was through a law suit against the railroad and that her lawyer had informed her that complainant had no interest in that money, and requested that she go with her to defendant's lawyer; that the next day defendant received a letter from C. C. Bierman, a lawyer, requesting her to call at his office; that defendant went to Bierman's office and told him how much money she had received and what she had done

with it, and that he told her complainant was entitled to $750 of it; that defendant then went to Condon's office and told him she feared her husband might learn of the birth of this daughter and leave her, and she wanted the matter settled; that thereafter there was a meeting at Condon's office between Bierman and Condon which was unpleasant; that Condon told her to tell her husband the truth, but she feared to do so and could not; that she and Condon then went to complainant, and complainant told Condon that Bierman, her lawyer, had told her she was entitled to part of the money, and Condon replied there was a difference of opinion between lawyers on that question, that meanwhile her mother might suffer and asked her what she would take and release her mother and that she replied $200 and that he, Condon, wrote a release and she read it and signed it, and he gave her his check for that amount which she accepted; that after handing complainant the check defendant requested Condon to prepare a will for defendant, which was then and there done and the same was executed; that said check could have been cashed, but never has been and has not been returned to complainant. The answer admits the purchase of the lot as alleged and that she occupies the same with her husband; that she has on motion of complainant executed a bond for $4,200 which has been approved by the court and denies that complainant is entitled to any relief.

The cause was referred to the master to take the evidence and report it with his conclusions. Exceptions were filed to the report of the master and a decree entered finding that the equities of the cause are with the complainant; that George Ryan and Maude Huddleston were illegitimate children of Margaret Henderson and said Maude Huddleston illegitimate and Margaret Henderson are Ryan's only heirs at law and next of kin; that Ryan lost his life in an accident; that letters of administration on his estate were issued

to Margaret Henderson on April 22, 1910; that she brought suit against the Chicago and Alton Railroad Company under chapter 70 of the Revised Statutes; that said suit was compromised May 7, 1911, for $2,900, received by Margaret Henderson as administratrix and she has paid to the attorneys $800 for their fees and disbursements; and is now chargeable with $2,100 net as such administratrix; that said $2,100 under the statute is for the exclusive benefit of the next of kin; that Margaret Henderson, as administratrix and mother, sustained a fiduciary relation toward complainant and was bound to deal in the distribution of the trust estate in the utmost good faith and this she has wholly failed to do; that in taking out letters and bringing suit she withheld the fact from the court that complainant was her daughter and a sister of deceased; that the complainant executed a release and that it was obtained by fraud and circumvention and should be set aside and canceled; that complainant and Margaret Henderson are each entitled to one-half of said $2,100, now held by Margaret Henderson as administratrix, after the costs of the probate court are paid; that Margaret Henderson has invested part of said money so received in a certain lot describing it and she now holds title to the same.

The court decrees that said release be canceled; that the injunction be continued until the further order of the court; and that distribution of said $2,100 be made according to the statute; and that one-half of said $2,100 after the costs of the probate court are paid, be paid to complainant; and that Margaret Henderson pay the costs of this proceeding. Margaret Henderson appeals personally and as administratrix.

ALBERT SALZENSTEIN, for appellants.

C. C. BIERMAN, for appellee; E. S. SMITH, of counsel.

MR. PRESIDING JUSTICE THOMPSON delivered the opinion of the court.

The errors urged are (1) that the bill not waiving the oath to the answer the proof is not sufficient to sustain the finding that fraud and circumvention was used to procure the signature to the release, and (2) that complainant being a collateral heir has no interest in the money recovered without proof that the heir was dependent on the deceased in his life time and there can be no recovery for a sister of illegitimate birth who has not received pecuniary assistance and was not dependent on the deceased. It is also stated (3) that a court of equity will not take jurisdiction of the settlement of estates except in extraordinary cases, and that (4) the administratrix is entitled to commissions on the money in her hands.

As to the first contention, the bill alleges and the answer admits that Margaret Henderson, the administratrix, is the mother of Maude Huddleston and of George Ryan, the deceased. As administratrix, appellant was trustee of the funds of the estate for the parties entitled thereto and owed the utmost good faith to appellee. An administrator holds the title to the property of an estate in the right of the heirs, and occupies a fiduciary relation to the heirs of the estate. *Mayrand v. Mayrand,* 194 Ill. 45; *Woods v. Roberts,* 185 Ill. 489; *Mettler v. Warner,* 249 Ill. 341, affirming 156 Ill. App. 31. "Transactions between a party and one bearing a fiduciary relation to him are upon his motion *prima facie* voidable upon grounds of public policy, and the burden of proof, the fiduciary relation being established, is upon the one receiving the benefit to show an absence of undue influence, by establishing the fact that the party acted upon competent and independent advice of another, or such other facts as will satisfy the court that the dealing was at arm's length, or he must show that the transaction was had in the most perfect good faith on his part and was equitable

and just between the parties, or, as some of the authorities say, that it was beneficial to the other party." *Thomas v. Whitney,* 186 Ill. 225; *Woods v. Roberts, supra; Mayrand v. Mayrand, supra; Beach v. Wilton,* 244 Ill. 413. "A release by a *cestui que trust* will not be binding unless he is first made fully acquainted with his rights, and the nature and full extent of the liabilities of the trustee. Any concealment, misrepresentation, or other fraudulent conduct, on the part of the trustee will vitiate such a release, * * * and the burden of proof is on the trustee to vindicate the transaction from any shadow of suspicion, and to show that it was perfectly fair and reasonable." *Jones v. Lloyd,* 117 Ill. 597.

The record shows that appellant appears to have concealed from appellee, the fact that appellee had any interest in the money received from the railroad company for the death of her brother. When appellee heard that her mother had some money in which she had an interest she went to see appellant, who told her she had no interest in it. The answer states that appellant took appellee to appellant's attorney, who also informed appellee that she had no interest in the money received from the Railroad Company as damages for her brother's death. Condon, the attorney for appellee, testified to repeatedly telling appellee that she had no interest in the money; that appellant in his presence told appellee that for the husband of appellant to learn that appellee was appellant's daughter might cause him to desert appellant; that after learning that appellee had consulted a lawyer he told her that her lawyer was a young man who had not handled personal injury cases, while he, the witness, had handled many, and was better acquainted with such matters, and he had consulted with his partner, and after consulting the authorities "we concluded Mrs. Huddleston was not entitled to any of the money;" and that he told appellee, if it should get in the papers

that she was claiming any of the money, appellant's husband would leave her, and it was appellee's duty to execute a release. Mrs. Turner, the foster mother of appellee, testified that in August, 1911, Condon with appellant came to her home and offered to pay her to get appellee to withdraw her suit.

It is shown by the evidence for appellant that after appellant and her attorney both knew appellee was consulting an attorney, they went to Mrs. Crabbe's where appellee was working as a domestic, and there drew a will for appellant to execute devising her estate to appellee, and procured the signature of appellee as a witness to what she supposed was a will and gave her a check for $200 and the possession of the will, and told her to cash the check and not go near her attorney, but leave the city. Appellee discovered immediately after appellant and her attorney had left Mrs. Crabbe's that she had not signed a will, and thinking something was wrong, she at once went to her attorney and the check was returned to appellant's attorney the day it was given to her.

The evidence of appellee is that the will was talked about and written by Condon in her presence, and that appellant signed it and Condon asked Mrs. Crabbe for whom appellee was working to sign it, and then said, ''Well, you sign it Maude'' and there was another paper under it and she signed the wrong paper and Condon gave her a check for $200 and that she did not know she signed a release. Mrs. Crabbe testified that she saw no other paper except the will, and that Condon said, ''Mrs. Henderson said she had no objection to my knowing what was in the will; he said I will read it to you and you can sign it and Mrs. Henderson will sign it and Maude will sign it.''

The admissions of the answer, the evidence of appellant and her attorney and Mrs. Crabbe with that of appellee; the advice of Condon to appellee to cash the check, keep away from her attorney, ''to get your

trunk and get out of town;" the getting the paper signed by appellee in the absence of her attorney, the statements of Condon concerning her attorney and drawing a will in favor of appellee and handing it to appellee, and the unconscionable breach of trust by appellant, as administratrix, concurred in and assisted by her attorney, all prove the allegations of the bill that the release was procured by fraud and circumvention and overcome the statements of the answer, that are responsive to the bill, by more than the equivalent of two witnesses.

The bill was filed for the purpose of having the release vacated and declared null and void, enjoining the appellant from transferring the property bought with the money obtained on the settlement and withdrawing the money from the bank until the settlement of the estate and for general relief. The question of the interest of the appellee is raised by the allegations of the bill, the answer and the contention of the appellant that appellee has no interest in the money received on the settlement and hence no right to maintain this suit. In settling that question the court was justified in finding what were the interests of the parties under the pleadings, the prayer for general relief and the evidence.

Appellant's second contention, that appellee has no interest is based upon the principle, that in a suit at law by an administratrix on behalf of collateral relatives to recover damages for the death of a relative, there can be no recovery, unless it is proved that the collateral relatives received pecuniary assistance from and were dependant on the deceased. While that is the law and the burden of proof to show such dependence is on the brothers and sisters, yet, when the damages have been recovered that question is entirely irrelevant and immaterial. The statute, section 2, chapter 70, provides the money "shall be distributed to such widow and next of kin in the proportion provided by

law in relation to the distribution of personal property, left by persons dying intestate.'' Section 2 of chapter 39, of the statute, title ''Descent,'' is the section concerning ''Illegitimates.'' The fourth paragraph of that section provides: ''When there is no widow or surviving husband, and no child or descendants of a child, the estate of such person shall descend to and vest in the mother and her children and their descendants—one half to the mother and the other half to be equally divided between her children and their descendants, the descendants of a child taking the share of their deceased parent or ancestor.'' The question to which counsel for appellant have devoted much the greater part of their argument is settled by the terms of the statute as quoted. There is nothing to be construed, the language is clear and unequivocal. There is no foundation for their contention and the court correctly found that the interest of appellant was one-half of the money received after the payment of the probate costs. All the findings of fact by the court are fully sustained by the evidence and the pleadings.

Appellant also contends that ''a court of equity will not except in extraordinary cases take jurisdiction in the administration and settlement of estates.'' The circuit court as a court of equity had jurisdiction of this cause to set aside the pretended release on the ground of fraud, and no other court had jurisdiction to grant such relief. Having acquired jurisdiction for that purpose, the court should in the interest of justice and to avoid a multiplicity of suits on a bill containing suitable allegations, have assumed full jurisdiction of the estate and retained jurisdiction until complete justice was done between the parties in respect to the subject-matter of the litigation. *Dougherty v. Hughes,* 165 Ill. 384; *Elting v. First Nat. Bank,* 173 Ill. 368; *Moore v. Brandenburg,* 248 Ill. 232, 140 Am. St. 206, rev'g 154 A. 156; *Holden v. Holden,* 24 Ill. App. 106.

While there is no specific prayer that appellant be

decreed to pay to appellee the part of the money received from the settlement found to be due her there is a prayer for general relief. That part of the decree ordering that half the money received that remains after the payment of costs be paid to appellee can be sustained under the prayer for general relief.

It is also insisted that the court erred in not allowing appellant an administrator's commission on the sum collected as damages for the death of her son. Letters of administration were issued to her in March, 1910. In May, 1911, she collected $2,900 on a compromise of the suit and after paying her attorneys there remained $2,100 net to the estate. She did not disclose to the probate court the fact that she had a daughter, the appellee, who is an heir of the deceased. In August, 1911, appellee demanded her share of the estate. At that time appellant had invested in real estate in her own name $1,375 of the $2,100, and had part of the proceeds in a bank in her own name. Appellant has wrongfully insisted that appellee has no interest in the sum recovered and from the time of the investment of part of the amount in real estate to the present time has had the personal use of such real estate. The appellee by law should have received her half as soon after the money was received on the compromise with the railroad company as the estate could be settled. The appellant was properly chargeable with interest on the money she personally used. She might under the statute be charged with interest at ten per cent. per annum on the money in her hands after two years and six months from the date of the letters of administration. Statute, section 113, chapter 3. She was allowed credit for the sum paid her attorneys for the collection of damages from the railroad company; even if she had not been guilty of attempting to wrongfully beat appellee out of her share, the interest on the part invested in real estate to the present time would be a reasonable compensation for her services.

Numerous cases hold that compensation may be refused if the administrator has been guilty of wilful default or misconduct in the administration of the estate. *Whittemore v. Coleman,* 239 Ill. 450; *In re Estate of Wincox,* 186 Ill. 445; *Whittemore v. Coleman,* 144 Ill. App. 109; Woerner on Adm'r, 1163. There was no error in refusing to allow a commission to appellant.

The decree of the court continues the injunction "until the further order of the court." The court evidently had in view the making of a further order releasing the injunction, when appellant shall have arranged to pay her daughter what is due her. The decree should have made some provision for its dissolution, when appellee receives her share of the money. That part of the decree continuing the injunction "until the further order of the court" is erroneous (*Sholty v. Sholty,* 140 Ill. 81) and will be reversed and the cause will be remanded to the trial court with instructions to enter a decree continuing the injunction, until appellee has received what is due her from appellant, except that the money in the bank, and the said real estate may be used by appellant to pay appellee the half of said money so received that is due her after the payment of the costs in the probate court; in all other respects the decree will be affirmed. However, counsel for appellant has not in any way raised any question over that part of the decree which continues the injunction until the further order of the court nor mentioned it in his brief and argument or assigned error on that question. Since the decree is reversed on an error not raised by appellants, the costs of appellants on this appeal will be taxed to Margaret Henderson personally and the costs of appellee to her.

*Decree affirmed in part, reversed in part and remanded with directions.*