EDWARD MAYRAND et al.

v.

MARIE MAYRAND.

*Opinion filed December 18, 1901.*

1. WIDOW'S AWARD—*when burden is on executors to show fairness of release.* Sons of the testator who are executors and residuary legatees under the will, occupy such a fiduciary relation to their stepmother, the widow, as to cast upon them the burden of showing that a release of the widow's award, contained in her written acceptance of the provisions of the will, was executed by the widow fully understanding the effect thereof and intending thereby to release her award.

2. SAME—*when fairness of release of widow's award is not established.* A release of the widow's award, contained in her written acceptance of the terms of the will, procured by the executors, (her stepsons, and residuary legatees under the will,) is not shown to be binding where it appears the widow was old, sick, unfamiliar with the language in which the release was written, was approached immediately after her husband's funeral and given no opportunity to seek legal advice, and where, although there is evidence that the release was explained to her, there is none that she was informed of the value of the award or the estate, or that she had a year to elect to take under the will or under the law.

*Mayrand* v. *Mayrand*, 96 Ill. App. 481, affirmed.

APPEAL from the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of Kankakee county; the Hon. JOHN SMALL, Judge, presiding.

W. H. SAVARY, and PAYSON & KESSLER, for appellants.

ALEXIS L. GRANGER, and H. H. & H. K. WHEELER, for appellee.

Mr. JUSTICE HAND delivered the opinion of the court:

This is an application by appellee, in the county court of Kankakee county, to have allowed to her an award as widow of Edward Mayrand, deceased.

Edward Mayrand died testate on April 15, 1900, leaving an estate, consisting of real and personal property, approximately of the value of $45,000. He had been married twice. By his first marriage he had five children, who survive him, two of whom are the executors of his will. The appellee was his second wife, by whom he had one child, now Mrs. Lillie Franklin. By his will he gave to the appellee his household furniture, the use of the homestead, $1000 in cash and an annuity of $500, payable in semi-annual installments, which was not in lieu of a widow's award. On April 19,—four days after the death of the testator,—Edward Mayrand, one of the executors, called upon the appellee and inquired of her if she proposed to accept under the will, and proffered to her, if she would take under the will, he and his co-executor would pay her the legacy of $1000 and the first installment of her annuity immediately. On April 23 he called again, when she expressed a willingness to accept under the will. He then went to the office of W. H. Savary, a friend of the family and the attorney who drew the will, and caused to be prepared a release, which, after the formal part, reads as follows:

"For and in consideration of the liberal and satisfactory provisions made in my behalf in said last will and testament of my deceased husband, Edward Mayrand, aforesaid, filed in the county court of said county on the 19th day of April, 1900, the probate of which is set for May 21, 1900, I, the undersigned, Mary Mayrand, widow of said Edward Mayrand, deceased, do hereby knowingly, willingly, irrevocably, and without any restraint whatever, accept all and singular the aforesaid provisions of said last will and testament made in my behalf, as aforesaid; and I likewise renounce to, waive, release and relinquish my rights to a widow's award under the laws of said State of Illinois in and against the estate of said Edward Mayrand, deceased.

"Dated at the city of Kankakee, in said county, this 24th day of April, 1900.

MARIE MAYRAND.    [Seal.]"

On the following morning, in company with Mr. Savary and a notary public, Edward Mayrand called at the house of appellee and she signed and acknowledged said release. On the next day he again called at the house of appellee in company with his co-executor, turned over to her a note and mortgage for $1000 in payment of the legacy and paid to her $250 in cash, and had her execute carefully prepared receipts which he had with him, in one of which there was a recital that "she had accepted all and singular the provisions made in her behalf in said will and waived her rights to a widow's award." After the probate of the will and appointment of appellants as executors, the appellee filed a petition in the county court for the appointment of appraisers to set off her widow's award. Appraisers were appointed, who fixed her award at $1448.50, to the allowance of which appellants objected on the ground that appellee had waived and released her widow's award and was thereby precluded from claiming the same. The objections were overruled, the award allowed and an appeal taken to the circuit court, where the judgment of the county court was affirmed, and a further appeal prosecuted to the Appellate Court for the Second District, which court

affirmed the judgment of the circuit court, and the case has been brought to this court for a further review.

There is but one question in this record presented for our decision, viz., Is the release of appellee of her award binding upon her? The ground relied upon for a reversal is, that the evidence produced upon the trial in the circuit court was not sufficient to sustain the finding and judgment of that court.

Under the repeated decisions of this court (*Woods* v. *Roberts*, 185 Ill. 489; *Thomas* v. *Whitney*, 186 id. 225; *Sayles* v. *Christie*, 187 id. 420; *Marshall* v. *Coleman*, id. 556;) the appellants occupied such a fiduciary relation to the appellee as to cast upon them the burden of showing that the appellee executed said release fully understanding the effect thereof, and intended thereby to release her widow's award. In *Thomas* v. *Whitney*, *supra*, on page 230 we say: "There is a well defined distinction between undue influence arising from acts which the law deems fraudulent, and undue influence resulting from fiduciary relations existing between the parties. * * * 'The term fiduciary or confidential relation, as used in this connection, is a very broad one. It has been said that it exists, and that relief is granted, in all cases in which influence has been acquired and abused,—in which confidence has been reposed and betrayed. The origin of the confidence and the source of the influence are immaterial. The rule embraces both technical fiduciary relations and those informal relations which exist whenever one man trusts in and relies upon another. The only question is, does such a relation in fact exist?' * * * 'Unless the party claiming the benefit of the contract shows, by clear and convincing proof, that he acted with perfect good faith and did not abuse or betray the confidence reposed in him, * * * the presumption of fraud will require strong evidence to remove it.'"

Edward Mayrand, the attorney and the notary public, who were present at the time the appellee signed the

release, all testified that the release was fully explained
to appellee, and she was told that by the execution of
such release she would accept under the will and would
waive her widow's award. On the other hand, Mrs. Frank-
lin, who was present, and the appellee, both testify that
neither at the time of the execution of the release nor at
the several times when Edward Mayrand called at the
house of appellee was anything said by any one about
the release of a widow's award, and the appellee testi-
fies that at·that time she did not know what a widow's
award was, and that she did not intend to release, and
did not know that she was releasing, the same. The trial
judges in each of the lower courts saw all of the wit-
nesses and heard them testify, and they were in a better
position to judge than we which to believe. In *Fabrice*
v. *Von der Brelie*, 190 Ill. 460, we say (p. 465): "The evi-
dence was heard by the chancellor in open court and
was conflicting in many particulars. In such case, to
authorize us to reverse as to a finding of fact, the error
must be clear and palpable.—*Coari* v. *Olsen*, 91 Ill. 273;
*Johnson* v. *Johnson*, 125 id. 510; *Rackley* v. *Rackley*, 151 id.
332; *Brown* v. *Stewart*, 159 id. 212; *Elmstedt* v. *Nicholson*,
186 id. 580."

Furthermore, Mr. and Mrs. Mayrand had been mar-
ried about twenty-two years. She was a French woman,
about sixty years of age, testified through an interpreter,
and could speak, read and write English but little. For
a week after the funeral, and at the time she signed
the release, she was ill and confined to the house. The
executors were her step-sons, with whom her relations
during the time of her marriage to their father had been
friendly. The attorney who prepared the release, and
who was present at the time that she executed the same,
was a friend of the family, had been the attorney of the
testator during his lifetime, had drawn his will and was
one in whom appellee had confidence. The executors
by such release, as residuary legatees, were benefited

to the extent of two-fifths of the amount of the award. While the witnesses who were present, with the exception of Mrs. Franklin, testified that the appellee was told that by the execution of the release she would accept the will and relinquish her widow's award, none of them testified the appellee was informed whether her award was of much or little value, and there is no evidence to show that she knew the amount of her husband's estate, or that she was informed that she had one year in which to elect to take under the will or under the law, or what her rights under the law were, and it is clear it was against her interest to release her widow's award. She was old, sick, not familiar with the language in which the release was drawn, unacquainted with business or her legal rights, and was approached immediately after her husband's funeral, and given no opportunity to obtain legal advice or to advise with any of her relatives or friends, other than Mrs. Franklin. Under such circumstances she had the right to rely upon her step-sons, who were named as the executors of her husband's will, and it was their duty, and good faith required them, to explain to her fully the extent of her husband's estate, what a widow's award was and the probable value thereof, before having her execute a paper releasing the same, and whereby she surrendered an interest in her husband's estate substantially equal to the amount which she received under the will, without receiving anything in return therefor. In *Marshall* v. *Coleman,* 187 Ill. 556, on page 582 it is said: "Where two persons stand in such relation to each other that confidence is necessarily reposed by one in the other, and the one has over the other an influence which naturally grows out of that confidence, the abuse of such confidence or influence to obtain an advantage, at the expense of the confiding party, will not be permitted to prevail, even though the transaction could not have been impeached if no such confidential relations had existed.—*Tait* v. *Williamson,* L. R. 2 Ch. 55;

10 Am. & Eng. Ency. of Law, p. 327; 1 id. 375; *Purvines* v. *Harrison*, 151 Ill. 219; *Sayles* v. *Christie*, 187 id. 420; *White* v. *Ross*, 160 id. 56."

We find no reversible error in this record. The judgment of the Appellate Court will therefore be affirmed.

*Judgment affirmed.*