ANN M. HENSAN, Appellee, *vs.* JOHN B. COOKSEY, Appellant.

*Opinion filed December 15, 1908—Rehearing denied Feb. 3, 1909.*

1. PARENT AND CHILD—*when deed from parent to child will be set aside.* A conveyance of real estate made by a parent to a child in consideration of an undertaking to furnish the parent a comfortable home during life will be set aside, upon the application of the parent, where the child, after receiving the conveyance, fails to keep the agreement.

2. SAME—*effect when a fiduciary relation exists.* Where the proof shows that the relation between an aged woman in feeble health and her son, who had managed her business for her and upon whom she relied, is of a fiduciary character, the son has the burden of showing that a conveyance by her to him of her entire property was fair and free from any undue influence upon his part.

3. EVIDENCE—*existence of a confidential relation creates a presumption of influence.* The existence of a confidential relation creates a presumption of influence, which imposes upon the one receiving the benefit the burden of proving the absence of undue influence by showing that the other party acted upon the competent and independent advice of another, or such facts as will satisfy the court that the dealing was at arm's length, or that the transaction was in the utmost good faith and equitable as between the parties.

4. SAME—*what does not show that the son acted in good faith.* Proof that a deed from an aged mother to her son was made when she was weak from recent illness and exhausted from the effects of a journey taken at the son's request, against the advice of the other children, the purpose of which journey and the making of the deed being concealed from the other children by the son, who suggested and procured the execution of the deed conveying the mother's entire property, consisting of a ninety-acre farm, in return for his promise to pay her $500 and support her during life, does not show good faith by the son.

5. SAME—*what fact has no tendency to qualify the fiduciary relation.* The fact that a son who has obtained a conveyance from his aged mother of her entire property in return for a promise to pay her $500 and support her for life may have in the past rendered valuable services to the mother does not tend to qualify the fiduciary relation nor establish the validity of the deed, where it is not claimed that such services were any part of the consideration for the deed or that they were considered when the deed was made.

6. EQUITY—*when omission of offer of re-imbursement does not preclude relief.* Omission of an offer of re-imbursement from a bill to set aside a deed made in consideration of a promise to pay the grantor $500 and support her for life does not preclude setting aside the deed, where the evidence shows that the rental value of the property and the proceeds received by the defendant were sufficient to meet all his expenditures on account of the grantor, and where the note for $500, which he made without the grantor's knowledge, has never been out of his possession.

7. SAME—*when grantor is not liable for grantee's loss.* Upon setting aside a deed made in consideration of support the grantor is under no liability to re-imburse the grantee for any loss he may have sustained in the sale of cattle before moving upon the premises conveyed, where such sale was no part of the consideration for the deed.

APPEAL from the Circuit Court of Madison county; the Hon. B. R. BURROUGHS, Judge, presiding.

C. H. BURTON, for appellant.

E. B. GLASS, and E. G. HILL, for appellee.

Mr. JUSTICE DUNN delivered the opinion of the court:

This is an appeal from a decree setting aside a deed, and the principal question in the case is the sufficiency of the evidence.

Ann M. Hensan, the appellee, is the mother of the appellant, John B. Cooksey. At the time of the conveyance, November 26, 1904, she was seventy-four years old. The property conveyed was a farm of ninety acres, which had been her home but for several years had been rented and not occupied by her. She owned no other property except some grain and hay on the farm, which was taken by appel-

lant, and some money which she claimed appellant held for her and which he denied holding. She had been twice married, but was a widow having four children,—the appellant and three married daughters. For some years Mrs. Hensan had lived for the most part with her daughter Mrs. Harris, near Alhambra, in Madison county, though she frequently made long visits elsewhere. Her daughter's husband, John B. Harris, rented her farm until 1905, and his family and Mrs. Hensan formerly lived there together but more recently resided upon a farm in the vicinity owned by Harris. The appellant, who was about fifty years old at the time of the conveyance, had married before he was twenty-one and moved to Kansas, where he had ever since resided. He was a farmer and cattle raiser. He had been back and visited his mother several times and she had also visited him. He had assisted her in her business affairs and in some litigation in which she had been involved, and their relations seem always to have been cordial and affectionate. During the world's fair of 1904 appellant made three visits to his relatives near Alhambra. On the second of these visits, in October, his wife accompanied him. His mother was intending to return to Kansas with them, but when the day came did not feel able to undertake the journey. In the morning, before starting, he went into her room where she was in bed, told her he had a little surprise for her, and asked her how she would like to have him come back on the old place, fix it up and come back to live. She expressed great delight at the idea, and he said, very well, if he could make arrangements back there. The next month he came back, ostensibly to see the President at the world's fair but really to get from his mother a lease of the farm which he had prepared and brought with him from Kansas. This was a statement that she leased the farm to him, without stating for what time, the consideration to be thereafter determined. He took his mother in Harris' buggy and they drove over the farm. On this trip he told her he had a lit-

tle article showing that he had some right to come in on the farm next summer, and at his request she signed it. He says that at this time she said that she would have deeded the place to him long ago if it had not been for one or two things; that if it had not been for him she would have been penniless, and, after mentioning his various services to her, that he was the one that ought to have the farm and that she would make him a deed to it.

Mrs. Hensan had been quite seriously ill during the spring and summer of 1904, and part of the time was under the care of a physician. She was nervous and weak and was troubled with insomnia. The day before the deed was executed appellant said that he wanted to take his mother to the world's fair. Mrs. Harris objected on account of their mother's physical condition, but he persisted and the next morning the trip was undertaken. Mrs. Hensan was very weak and had to be assisted to the carriage. Alhambra is fourteen miles from Edwardsville, and on the train appellant suggested that they stop at Edwardsville and she make the deed to the farm there. They got off the train and went to a hotel near the station, where she lay down on a bed while he went to have the deed prepared. On his return with Mr. Wheeler, a lawyer whom he had employed to prepare the deed, she executed to him a warranty deed of the farm for an expressed consideration of natural love and affection and $500. No money was then paid or note given. Appellant and Mrs. Hensan went on to East St. Louis on an afternoon train, and he took her to the house of Mrs. Florence Gregory while he went to James Roseberry's house for the night. The next morning he made a short call at Mrs. Gregory's house and then went to his home in Kansas. Mrs. Hensan remained at Mrs. Gregory's until the next April, when she went to Arkansas with her daughter Mrs. Thimming.

Mrs. Hensan denies the conversation testified to by appellant in which he says she said she would make him a

deed for the farm, and says the first mention of a deed was made by him just before the train reached Edwardsville. She was tired and exhausted and remembers little of the conversation. Her son was to come back to the place, fix it up, take care of her and add another room for her convenience. Both the lease and the deed were kept secret from the other members of the family until the arrival of appellant and his family the next July. They were not informed of the deed until it was filed for record, in August, 1906.

Appellant came back to Alhambra the next summer with his family and took possession of the farm, telling his sister he had rented it. His mother lived with him a short time and then went away. She spent part of the time at Mrs. Harris', part of the time at East St. Louis and at intervals remained with the appellant for short periods. In the two years and a half before the filing of the bill she spent less than six months in the old home, to which she had been so anxious to return. To secure a home there for the rest of her life was the supposed chief motive for making the deed to appellant. The room which she says was to be added for her use was never built. Her son says he never agreed to build it. She says that her treatment in the family was such that she could not stay; that when strangers or visitors were present everything was pleasant and she was treated kindly but when no one was there her treatment was harsh and unkind. The greater part of her complaint is directed against Mrs. Cooksey, and she testifies to specific instances of abuse and ill-treatment. There is very little corroborative evidence, and in the nature of the case very little is possible, for she states that when others were present she was well treated. A number of witnesses who were at the home occasionally for short periods testify that she was treated kindly, but as to her treatment when the family were alone the case rests substantially on her testimony and that of the appellant, his daughter and his fourteen-year-old son. The treatment which makes the life of

an old woman in the family of a son comfortable or miserable is difficult to describe. Many of the things which make it kind or unkind are intangible and hardly noticeable to an observer or possible to narrate. The evidence was heard in open court, and the judge who heard the cause had advantages which we do not possess in determining the value to be given to the testimony of the various witnesses. From a reading of the evidence in the record we are inclined to agree with his finding that the treatment accorded to appellee was such as to constitute a breach of the agreement to care for her and provide her a comfortable home on the farm. The $500 was never paid nor was any note given for it. Appellant produced on the trial his note for $500, with six per cent interest, dated November 26, 1904, and payable to the order of his mother twelve months after date. It bears endorsements of the payment of the interest annually, to November 26, 1907. This note appellant says he wrote immediately upon his return to Kansas after getting the deed and kept it for his mother. It was never delivered to her and she knew nothing about it.

A conveyance of real estate made by a parent to a child in consideration of an undertaking to furnish the parent a comfortable home during life will be set aside upon the application of the parent, where the child, after receiving the conveyance, fails to keep his agreement. *Fabrice* v. *Von der Brelie*, 190 Ill. 460; *McClelland* v. *McClelland*, 176 id. 83; *Cooper* v. *Gum*, 152 id. 471.

The relation between appellant and appellee was of a fiduciary character. While the evidence does not show a want of mental capacity on the part of Mrs. Hensan, it does show that she had recently been quite ill. She was old and feeble. Her physical condition was very much reduced, and on the day she executed the deed she was so nervous, weak and exhausted that she could not have been capable of serious mental effort. Her son had managed her business affairs when they required attention. She relied upon

him when complications arose in connection with them, and she believed that his efforts had saved her property for her. He had himself proposed returning to the farm, to fix it up and live there. She had leased it to him upon a consideration to be afterward determined. Their relation was one of confidence reposed by her and is inconsistent with the idea that they were dealing at arm's length. A fiduciary relation exists in every case "in which there is confidence reposed on one side and the resulting superiority and influence on the other. The relation and the duties involved in it need not be legal; it may be moral, social, domestic or merely personal." *Irwin* v. *Sample,* 213 Ill. 160; *Walker* v. *Shepard,* 210 id. 100; *Roby* v. *Colehour,* 135 id. 300.

The existence of the confidential relation creates a presumption of influence which imposes upon the one receiving the benefit the burden of proving an absence of undue influence by showing that the party acted upon competent and independent advice of another, or such facts as will satisfy the court that the dealing was at arm's length, or that the transaction was had in the most perfect good faith on his part and was equitable and just between the parties, or, as some of the authorities say, that it was beneficial to the other party. (*Thomas* v. *Whitney,* 186 Ill. 225; *Fish* v. *Fish,* 235 id. 396.) Here the son took from his aged mother a deed for all of her property in return for a promise to pay her $500 and support her during her life, of which he gave her no written evidence. Instead of seeing that she had competent and independent advice she was taken away from the other members of the family, who were led to believe her journey was for another purpose and the transaction carefully kept secret. Appellant has not sustained the burden which the law casts upon him of showing that the dealing was at arm's length, that he acted in good faith or that the transaction was equitable and just.

It is objected that the court refused to hear evidence of the relations of appellant and the appellee for many years

and the faithful service of appellant to his mother in the past, and her statement that he had saved her farm for her and also some $3600 in money at the time of the death of her son. It is not claimed that these services were any part of the consideration for the deed or were taken into consideration when it was made. Even if they were admissible for the purpose of showing the relation of the parties and Mrs. Hensan's motive in making the deed, the deed could not be sustained as a gift on account of such services, and the facts proposed to be proved have no tendency to qualify the fiduciary relation or establish the validity of the deed in spite of such relation.

It is argued that the appellee did not offer by her bill to restore appellant to the condition in which he was before the execution of the deed. Appellee received nothing from appellant except her board for the few months she lived in his family, some doctors' bills paid and $52 in money. In addition to this appellant claims to have expended $600 or $700 in improvements on the farm. He occupied the farm for two years and received the proceeds of it, and received $182 for grain and hay on the place belonging to Mrs. Hensan when he went there. The court found that the rental value of the farm and the $182 received from the personal property were sufficient to meet all of appellant's disbursements for appellee, and the evidence sustains such finding. Mrs. Hensan is under no liability to reimburse him for the loss, if any, which he sustained in the sale of his cattle. The sale of his cattle was no part of the consideration for the deed. He has the $500 note, which has never been out of his possession.

The decree of the circuit court will be affirmed.

*Decree affirmed.*