Bertha Eichhorst, Appellant, v. Edward Eichhorst et al., Appellees.

Gen. No. 7,990.

576

Opinion filed May 7, 1929.

Richard R. Klein, for appellant; Alvin E. Stein, of counsel.

Frederick C. Harbour, for appellees.

Mr. Presiding Justice Jones delivered the opinion of the court.

Bertha Eichhorst filed her bill of complaint to set aside a certain trust agreement between her and appellees, because of fraud, undue influence, and want of consideration. An answer and a cross-bill were filed by the defendants. Issues of fact were made up and submitted to a jury. The findings of the jury were in favor of appellees and the chancellor rendered a decree dismissing the original bill for want of equity. This appeal is prosecuted to reverse that decree.

Prior to August, 1911, Emil Eichhorst, then a widower, resided with his several children on his farm of 320 acres near Downers Grove, Illinois. During that month he and appellant were married. They resided on the farm until December, 1917, at which time the family moved to Downers Grove. On November 22, 1919, Emil Eichhorst executed his last will and testament, appointing three of his sons executors and trustees. By the third paragraph there was given to his widow, all of the household goods, and also the house and lot situated in Downers Grove where they lived; all to be taken by her in lieu of widow's award, dower, and homestead rights, and to be held for and during her natural life, or so long as she shall remain his widow.

The fourth paragraph of the will devised and bequeathed to the executors and trustees, in trust, all of his other real estate, with power to manage it and to pay out of the gross income all taxes and costs of necessary maintenance. The trustees were then to pay to the widow, monthly, one-third of all the net income of the estate during her natural life, the balance of the income to be divided equally among his children.

In March, 1925, Emil Eichhorst and his wife entered into a contract to sell the farm to one Nelligan for $88,000, of which $500 was paid down, and the balance was to be paid in instalments, with a final payment of

$58,000 on or before April 18, 1926. Emil Eichhorst died September 27, 1925, and it appears that $15,000 of the purchase money was paid prior to that time. Shortly thereafter his will was admitted to probate by the county court of DuPage county, and letters testamentary were issued to the executors named in the will. The gross value of the estate was about $100,000. The farm was incumbered by a mortgage of $8,000 and after deducting the $15,000 paid before decedent's death, there remained an equity of $65,000 in it. The balance of the estate consisted of personal property.

The trust agreement bears date November 25, 1925, and was executed by appellant and all the children of decedent, including the three sons who were appointed executors of said will. The preamble of the agreement recites the substance of the fourth clause of decedent's will, except that it states the trustees were to pay appellant, monthly, one-third of all the net income of said *real* estate, and that at the time of making the will, decedent had in mind the income from the farm. However, the language of the will is "one-third of all the net income of my estate."

The trust agreement was prepared by Gustav H. Bunge, the attorney for the executors, and sets out that, by reason of the sale of the farm, the only real estate owned by decedent, in addition to the homestead occupied by his widow, consists of five vacant lots in the Village of Downers Grove, from which there is no income whatsoever; that the widow is therefore deprived of the income which was contemplated by the testator in and by the terms of his will; that she has expressed a willingness to abide by the terms of the will, except as to the provision made for her maintenance, and that the other heirs are willing to make provision for an income for her, sufficient to maintain the home and for her personal needs during her life. The agreement then provides that in lieu of the provision

contained in the fourth clause of the will, a trust fund of $20,000 is to be established and the income paid to appellant during her natural life.

In pursuance of the terms of the agreement, securities to the amount of $19,650 were deposited with the trustee. On February 17, 1926, appellant filed in the county court her renunciation of the provisions made for her by the will and elected to take her dower and legal share in the estate.

Edward Eichhorst, one of the executors, testified that within a few days after decedent's death, he procured a copy of the will from Bunge and went to appellant's house; that she asked him how the will was made, and he told her there would probably be some trouble because the farm had been sold, and if he understood or read it right, it provided she was to receive one-third of the income from all the real estate; and that he told her to call on Bunge. He also testified that he had several conversations with her about the matter, and that between the 21st and 24th of November, 1925, he called on her and told her that Bunge wanted to talk to her at his office.

Bunge testified that he advised appellant that she could either renounce the will and take absolutely one-third of the estate, or, if she wanted to comply with the desires of her husband as expressed in the will, she should not rely upon voluntary contributions from the heirs, but should insist upon some arrangement for the deposit of securities with a trustee from which she would derive sufficient income to keep her during her lifetime. He also testified that she suggested to him a trust fund of about $10,000, later asking that it be increased to $15,000, and still later suggested that the principal of the fund should be $18,000; and that finally at her suggestion it was increased to $20,000.

It appears from the record that appellant conferred with no one else about the matter until after the trust

agreement was executed, but relied upon the statements that Bunge and Edward Eichhorst had made to her. She testified in substance that Bunge told her the farm had been sold and there was nothing left for her; that the children were willing to provide a trust fund of $15,000 for her, but that she requested that the fund be made $18,000, to which he agreed. Her statements are corroborated by the testimony of an aunt of decedent, who testified that she was with appellant in Bunge's office at the time appellant claims such conversation took place. Appellant also testified that Bunge told her he thought it would be better for her to leave the will just the way it was, and not to break it. This statement is not contradicted in the record.

Under the Dower Act, section 10, chapter 41, Cahill's Revised Statutes, appellant had an interest in the estate of her deceased husband, of which she could not be divested by his will. (*Christensen v. Christensen,* 327 Ill. 448; *Lessley v. Lessley,* 44 Ill. 527; *In re Taylor's Will,* 55 Ill. 252.) By complying with the provisions of that section, she would be entitled to an absolute estate in lieu of dower, in the real estate of which her husband died seized, i. e., one-third of each parcel of real estate which he owned at the time of his death, which remained after the payment of all just debts and claims against his estate, and in which she waived her right of dower, and also one-third of the personal estate after the payment of all just debts. Under the statute, appellant was entitled, at any time within one year after the issue of letters testamentary, to renounce the benefit of the provisions made for her in the will..

The executors of the last will and testament of Emil Eichhorst, deceased, and their attorney, Gustav H. Bunge, bore a fiduciary relation to appellant. (*Christensen v. Christensen, supra; Lipscomb v. Allen,* 298 Ill. 537.) Appellees admit that such a fiduciary relation did exist. The law casts upon them the burden of proving by clear and convincing evidence that they

acted in perfect good faith and did not betray the confidence reposed in them. (*Mayrand v. Mayrand,* 194 Ill. 45; *Beach v. Wilton,* 244 Ill. 413.) Transactions of parties between whom a fiduciary relation exists are prima facie voidable upon grounds of public policy. The burden rested upon appellees to show that the transaction was entered into by appellant with full knowledge of its nature and effect and was the result of her deliberate, intelligent desire and for her benefit. (*Beach v. Wilton, supra; Mayrand v. Mayrand, supra; Lipscomb v. Allen, supra.*) When the fiduciary relation exists and there is a presumption as to the invalidity of the execution of papers under such conditions, such presumption must be overcome by showing that the person acted independently of any advice or suggestion of the dominating personality. Undue influence means an influence which acts to the injury of the person who is swayed by it, or of those whom it would, if left to himself, have benefited. It is immaterial by whom the undue influence is exercised, whether by a beneficiary or an outsider. (*Lipscomb v. Allen, supra.*)

It is apparent from the record that at and before the time appellant executed the trust agreement in question, she had not been fully informed of her rights under the law. It is not claimed by appellees that she was told by them or by anybody representing them, or that she knew, the extent or value of her husband's estate, or the length of time in which the law permitted her to file a renunciation of the benefits of the provisions made for her in her husband's will. The language of the preamble of the trust agreement lends support to appellant's claims that she was not fully advised of her rights and that she was led to believe that there was little left for her.

Appellant is a woman about 54 years of age, not in good health, illiterate and not familiar with the English language. She never attended an English school, but had attended a German school about three years,

Under the trust agreement, complainant would receive only the income from a $20,000 trust fund during her natural life, whereas under the statute, by renouncing the provisions of her deceased husband's will, she would be entitled to one-third of the net estate left after the payment of decedent's debts. Such one-third would amount to approximately $30,000, which she would receive absolutely. We are of the opinion that the testimony shows that appellant, in executing the trust agreement, did not act with a full knowledge of her rights. In order to bind a party by election it must be made with full knowledge of all the facts, and if made by mistake or under a misapprehension, or in ignorance of the facts or the rights of the party, it will not be conclusive. Where the rights of third persons have not intervened, an election made in ignorance or under misapprehension of the effect of the act or the extent of the party's rights is not binding and may be revoked. (*Carper v. Crowl,* 149 Ill. 465.) Before any presumption of an election can arise, it is necessary to show that the party acting or acquiescing was cognizant of his rights. (*Cowdrey v. Hitchcock,* 103 Ill. 262.)

It is apparent from the record that appellant, through her conversation with Edward Eichhorst and Bunge, conceived the idea that the sale of decedent's farm prior to his death deprived her from any income from his estate. In order to entitle her to relief, it is not necessary for her to show that the representation or advice by which she was induced to execute the trust agreement was made with fraudulent intent. The trust agreement which she executed gave to decedent's children property to which they were not entitled, under misrepresentations which, however innocently made, operated as a fraud on her. It is against conscience for those who enter into the error to insist upon the fruits of the contract. She depended upon them and their advice and opinion in the transaction of the busi-

ness. They bore her a fiduciary relation. There is a marked disparity in the position and intelligence of the parties, so that they have not dealt on equal terms. Where the party obtaining property is the dominant one and has taken advantage of the confidence reposed in him, equity will grant relief notwithstanding the mistake under which the agreement was made was one of law. (*Engelbrecht v. Engelbrecht,* 323 Ill. 208.)

The purpose of allowing a widow a year within which to determine whether she will accept the provisions of her deceased husband's will, or elect to take under the statutory provision made for her, is to enable her to determine the condition of the estate and which course would be more advantageous to her. (*Canavan v. McNulty,* 328 Ill. 388.) The trust agreement was executed about 60 days after decedent's death. Appellant went to Bunge's office at the solicitation of Bunge and Edward Eichhorst. They owed her the duty to fully advise her of the nature and extent of the estate, of the fact that she was entitled to make her renunciation at any time within a year after letters testamentary were issued, and to fully advise and inform her of everything which would be to her advantage in the matter.

There is nothing in this record which made it inequitable for appellant to renounce at the time she did. Under the facts, she cannot be deemed to have "elected" within the meaning of that term by taking a part of that which she would otherwise receive by operation of law.

The court erred in dismissing the original bill and in declaring null and void the renunciation filed by complainant. The decree is reversed and the cause remanded with directions to the chancellor to enter a decree granting the relief prayed for in complainant's bill.

*Reversed and remanded with directions.*