(No. 30399.—■■■■■■)

ELSIE L. KRIEG *et al.,* Appellees, *vs.* CARL O. FELGNER *et al.,* Appellants.

*Opinion filed March 18, 1948—Rehearing denied May 13, 1948.*

MCKINLEY, FOLONIE & CARLSON, (DANIEL H. GREAR, of counsel,) both of Chicago, for appellants.

John O. Wagner, and August J. Calcagno, both of Chicago, for appellees.

Mr. Justice Simpson delivered the opinion of the court:

This is an appeal to reverse a decree of the superior court of Cook County, ordering the appellants, Carl O. Felgner and Marion Felgner, his wife, to execute and deliver, to the appellee Anna M. Felgner, deeds conveying to her all their right, title and interest in and to certain parcels of real estate acquired by them from her, subject to the encumbrances existing thereon at the time, and ordering an accounting between appellants and said Anna M. Felgner. A freehold being involved, the appeal comes here directly.

Carl O. Felgner is the son and Elsie L. Krieg is the daughter of Otto Felgner, deceased, and Anna M. Felgner. Marion Felgner is the wife of Carl O. Felgner and Earl C. Krieg is the husband of Elsie L. Krieg.

The original complaint was filed by Elsie L. Krieg and Earl C. Krieg against appellants and Anna M. Felgner. By an amended complaint, Anna M. Felgner was changed from defendant to plaintiff. The case was heard upon a third amended complaint to which answers were filed.

The third amended complaint alleged the relationship of the parties, the making of the conveyances in question, the indebtedness on the real estate described in the complaint, a confidential or fiduciary relationship between Anna M. Felgner and Carl O. Felgner at the time of the execution of the instruments in question, and charged in substance that fraud, undue influence and misrepresentation were practiced upon Anna M. Felgner by her son, Carl O. Felgner, in procuring conveyances to him and his wife and also in procuring a note and mortgage in his favor upon the premises. The answer of appellants admitted all the material allegations of the complaint but denied the

allegations concerning confidential or fiduciary relationship and the alleged fraud, undue influence, misrepresentation and wrongdoing.

The cause was referred to a master who reported in favor of the appellants and overruled the objections of appellees to his report, except as to one minor matter concerning fees. The objections stood as exceptions in the superior court, which sustained the exceptions and reversed the findings and conclusions of the master and entered the decree which is the subject of attack in this court.

The parties agree upon many of the facts. The evidence shows that at the time of the death of Otto Felgner, April 1, 1936, Anna M. Felgner, the surviving joint tenant, became seized in fee of the two parcels of real estate designated in the complaint as parcel 1 and parcel 2; that parcel 1 is improved with a six-flat brick building and parcel 2 with a .two-flat brick building; that Anna M. Felgner, with her husband, resided in an apartment in the two-flat building and that she has continued to reside therein; that Carl O. Felgner and Marion Felgner, his wife, from about 1926 have occupied a four-room apartment in the six-flat building appurtenant to parcel 1; that the said Carl O. Felgner paid $20 per month rent being $5 less than the other tenants paid, until May 1, 1936, but has paid no rent since; that Otto Felgner in his lifetime controlled and managed the two apartment buildings, collected the rents and cared for, maintained and kept in repair, both properties; that during the time when Otto and Anna M. Felgner were absent on vacation, Carl O. Felgner and Marion Felgner collected the rents and paid over the money to his father, or to Anna M. Felgner upon their return; that Carl sometimes assisted his father in making minor repairs and occasionally handled funds of his father with which he paid taxes and other bills for his father.

Immediately following the death of his father, Carl,

a truck driver, took off two weeks and worked on the two parcels of real estate, making repairs and improvements thereon. During that time his mother requested him to take over the care and management of both parcels of real estate and to collect the rents from the tenants in parcel 1 for her. He informed her that he would do so, only upon condition that the title to the premises be transferred and conveyed so as to vest in him and her as joint tenants, so in the event she predeceased him, he would become the sole owner thereof; that she would receive during her lifetime the net proceeds from the income of said parcels and that he would account to her for rents collected from said parcel 1, less operating expenses for taxes, repairs, interest and the like and that he would do any work he could on the premises and not charge anything for his services. He further agreed orally that in the event his mother should predecease him, he would sell parcel 2 and after paying funeral expenses and any debts of his mother, he would pay over to the children of Elsie Krieg, his sister, the balance of the proceeds from such sale. Anna M. Felgner on May 1, 1936, conveyed to her nominee the two parcels of real estate and on the same day the nominee and his wife by warranty deeds conveyed to Carl O. Felgner and his mother, Anna M. Felgner, in joint tenancy, the same premises. Anna M. Felgner collected the rent from the other apartment in parcel 2. The indebtedness of $3500 on parcel 1 was renewed in November, 1938, by a new note signed by Anna M. Felgner, Carl O. Felgner and Marion Felgner, his wife, and secured by a new trust deed. On May 1, 1941, $500 was paid on the $2500 mortgage, out of moneys collected from rents and money furnished by Anna M. Felgner.

On July 13, 1943, Anna M. Felgner, Carl O. Felgner and Marion Felgner went to a real-estate office and there executed a deed in and by which they conveyed to their nominee parcel 1, and on the same day their nominee exe-

cuted a deed conveying the same premises to Carl O. Felgner, Marion Felgner, his wife, and Anna M. Felgner, as joint tenants. On or prior to that day, Carl O. Felgner and Marion Felgner had paid from their own funds the $3500 mortgage which they had signed with Anna M. Felgner in November, 1938, on parcel 1, and afterwards, on August 1, 1943, Anna M. Felgner signed a note and trust deed for $3500 in favor of Carl O. and Marion Felgner to secure them for this advancement. This trust deed covered only her interest in parcels 1 and 2. By this transaction Carl O. Felgner and wife were no longer obligated on the $3500 note but they had the mother's note and mortgage securing them for the amount advanced.

On November 9, 1944, Anna M. Felgner conveyed by quitclaim deed to her daughter, appellee Elsie L. Krieg, all her right, title and interest in both parcel 1 and parcel 2, which deed was recorded. Elsie L. Krieg testified that, upon request of her mother, she would reconvey the title to her; that Carl O. Felgner and Marion Felgner have been at all times since August 1, 1943, and are now, the legal holders and owners of the note and trust deed of that date, for $3500 signed by Anna M. Felgner; that on or about November 13, 1944, $1000 was paid upon said note and trust deed out of the proceeds of rents collected by Carl O. Felgner and deposited in the bank in his name. Anna M. Felgner testified that at various times since July, 1943, she has requested Carl O. Felgner to reconvey to her the parcel of real estate hereinbefore referred to and designated as parcel 2, being the same which he agreed to sell and pay over the proceeds to the children of Elsie L. Krieg, but that Carl has been unwilling to make such conveyance and it has never been made. Carl O. Felgner denied that his mother had made such requests.

Anna M. Felgner was 73 years old at the time she testified in March, 1946. During her husband's last illness, and at the time of his death, she was suffering from a

nervous breakdown. Carl O. Felgner was about 35 years old at the time of his father's death. When negotiations were being held during the month of April, concerning the conveyances executed on May 1, 1936, they were always in the presence of Carl and Marion Felgner and a lawyer acquaintance of Carl's employed to make out the papers. The mother never had any outside advice concerning the transactions and relied wholly upon her son and the lawyer for advice.

Anna M. Felgner testified that Carl did not at first say anything about the two-flat; that when she signed over the six-flat in joint tenancy Carl then said he would like to have the other signed over in joint tenancy too; she said she could not do that very well because she always figured Elsie should have that and he said he would only do it under those conditions, otherwise he would move out; she said, "I told him I couldn't see it that way; that I was the mother and I should dish it out and whatever my daughter gets is only for her children. Then Mr. Raysa [the lawyer] said I could have a trust fund for the children. * * * Finally, I said 'all right' and I signed the two-flat in joint tenancy between Carl and myself."

With reference to the mortgage of August 1, 1943, Anna M. Felgner further testified, "On a Sunday evening, August 1, I was at my son's house for dinner. Mr. Raysa came over about seven o'clock. I did not know that Mr. Raysa would be there. Carl said Mr. Raysa was there and that the papers were ready. I was under the impression it was for the security on the same mortgage because it was not signed in his presence. I thought it would not be legal if a lawyer was not present. The paper was read to me and I thought it was security for the same $3500.00 I gave on my six-flat. I just signed the papers; that was all there was to it."

Carl O. Felgner testified, "As far as I know the only money my mother had was the money I gave her from

the six-flat and also the rent she collected from one flat of the two-flat building where she lived." He paid no rent after May 1, 1936, and in an expense account charged to his mother was an item of $253.30 for repairing and decorating his apartment.

The superior court found that the conveyances made on or about July 13, 1943, through which title to parcel 1 became vested in Carl O. Felgner, Marion Felgner and Anna M. Felgner as joint tenants, were intended by Anna M. Felgner as security to her son and his wife for the $3500 which had been reduced to $2500 and that the trust deed dated about August 1, 1943, was given as security for the same indebtedness; that Anna M. Felgner was placed in an unfair position by her son and was at a disadvantage and that he used undue influence in inducing her to convey to him in joint tenancy with her said parcels of real estate designated as parcel 1 and parcel 2. The court found that she was the equitable owner of both said parcels subject to the respective encumbrances thereon and that she should be restored to her rights as sole owner of both parcels in fee simple subject to the encumbrances. The court also found that Elsie L. Krieg held title to said parcels for the benefit of said Anna M. Felgner and is willing to make reconveyance thereof to her mother, which should be done, and that there should be an accounting between Carl O. Felgner and wife and Anna M. Felgner of all receipts and disbursements pertaining to both parcels. The court ordered Carl O. Felgner and wife to execute and deliver to Anna M. Felgner good and sufficient deeds of conveyance to both tracts, subject to the encumbrances thereon, together with any leases or other documents properly assigned.

Appellants complain that the objections to the master's report, which stood as exceptions before the court, are insufficient to present any question as to the correctness of the master's finding of fact. No objections to the suf-

ficiency of those objections and exceptions were raised or considered in the lower court. The objections of both sides were heard by the master who filed a supplemental report in which he overruled all objections except the one as to his fees, which he sustained and recommended that the costs be assessed against both sides. The findings of fact are fully set out in the decree and are substantially the same as those found by the master. We find that the objections and exceptions are sufficient to cover every question presented.

Appellants argue that the master, having heard and seen the witnesses, is in a better position than the chancellor to judge the credibility of the witnesses; that his findings should be given due weight on review, citing the case of *Pasedach* v. *Auw*, 364 Ill. 491, and other cases. We held in the *Pasedach case* that it was the province of the master in the first instance to hear the witnesses and determine the facts and that where the evidence for the respective parties cannot be reconciled, the master's findings are entitled to due weight on review of the cause. In the present case there is little conflict in the testimony and, as pointed out, the findings of fact by the court are substantially the same as found by the master. We said in *Jones* v. *Koepke*, 387 Ill. 97, "In a chancery case the facts are found by the court and the master's report, while *prima facie* correct, is of an advisory nature only. The facts are all open for consideration, in the first instance, by the trial court and afterwards by this court, in case of an appeal. Without regard to the findings of the master upon any particular question of fact, the ultimate and final question in this court is, Was the decree rendered by the court a proper one under the law and the evidence?"

An important question presented here is whether a fiduciary relationship existed between Anna M. Felgner and her son, Carl O. Felgner. Where the parent defers to, trusts in and yields to, the child, where there exists between

them what in law is termed a fiduciary relation in which the parent is dominated by the child, and where the child prepares, or causes to be prepared and executed, an instrument conveying to him property of the parent as a gift or upon a grossly inadequate consideration, the presumption arises that the transfer was obtained through his undue influence, and the burden then rests upon him to show that the conveyance was the result of full and free deliberation on the part of the parent. *Rickman* v. *Meier*, 213 Ill. 507.

In *Lipscomb* v. *Allen*, 298 Ill. 537, we defined fiduciary or confidential relations in the following language, "The term fiduciary or confidential relation, as used in this connection, is a very broad one. It has been said that it exists, and that relief is granted, in all cases in which influence has been acquired and abused,—in which confidence has been reposed and betrayed. The origin of the confidence and the source of the influence are immaterial. The rule embraces both technical fiduciary relations and those informal relations which exist whenever one man trusts in and relies upon another. The only question is, does such a relation in fact exist? (*Mayrand* v. *Mayrand*, 194 Ill. 45.) It is settled by the overwhelming weight of authority that the principle extends to every possible case in which a fiduciary relation exists as a fact, in which there is confidence reposed on one side and the resulting superiority and influence on the other. The relation and the duties involved in it need not be legal. It may be moral, social, domestic or merely personal." We also said in the same case, "What constitutes undue influence depends upon the circumstances of each case. Such influence is a species of constructive fraud which the court will not undertake to define by any fixed words. (*Sargent* v. *Roberts*, 265 Ill. 210.) Undue influence means an influence which acts to the injury of the person who is swayed by it, or of those whom he would, if left to himself, have benefited."

In *Schueler* v. *Blomstrand*, 394 Ill. 600, we said, "Im-

portant factors in determining whether a particular transaction is fair include a showing by the fiduciary (1) that he has made a free and frank disclosure of all the relevant information which he had; (2) that the consideration was adequate, and (3) that the principal had competent and independent advice before completing the transaction."

The facts in the case of *Hensan* v. *Cooksey,* 237 Ill. 620, are similar to the facts in the present case. In that case we held, "The relation between appellant and appellee was of a fiduciary character. While the evidence does not show a want of mental capacity on the part of Mrs. Hensan, it does show that she had recently been quite ill. She was old and feeble. Her physical condition was very much reduced, and on the day she executed the deed she was so nervous, weak and exhausted that she could not have been capable of serious mental effort. Her son had managed her business affairs when they required attention. She relied upon him when complications arose in connection with them, and she believed that his efforts had saved her property for her."

From the facts in this case, we are of the opinion that a fiduciary relationship existed between Carl O. Felgner and his mother, Anna M. Felgner, and the burden is upon him to prove that all the transactions with her after his father's death were fair, that he made full and frank disclosures of all the relevant information which he had and that the consideration given for the conveyance to him and his wife was adequate. The appellants have failed to meet this burden.

From a careful consideration of the whole record, we are of the opinion that the evidence warrants the findings and decree of the superior court. The decree is therefore affirmed.

*Decree affirmed.*