William W. WOODBURY, Plaintiff and Appellee,

v.

Doris N. PFLIIGER, individually and as one of the personal representatives of the Estate of Minnie Woodbury, Defendant and Appellant.

Civ. No. 9955.

Supreme Court of North Dakota.

Aug. 3, 1981.

Sperry & Erickson, Bismarck, for plaintiff and appellee; argued by Floyd B. Sperry, Bismarck.

Chapman & Chapman, Bismarck, for defendant and appellant; argued by Daniel J. Chapman, Bismarck.

SAND, Justice.

This is an appeal by the defendant, Doris N. Pfliiger (Doris), individually and in her capacity as one of the personal representatives of the estate of Minnie B. Woodbury (Minnie), from a district court judgment ordering her to convey title to real property in Minnie's estate to the plaintiff, William W. Woodbury (William).

On 27 July 1966 Minnie and William executed a contract for deed whereby Minnie sold William 800 acres of real property for $14,188.00. The down payment on the real property was $2,188.00 with the balance due over a period of 12 years at a five percent per annum interest rate. A check in the amount of $2,188.00 signed by William, made payable to Minnie and dated 27 July 1966, contains a notation that it was for the down payment for the land. The district court found that three of the remaining payments, in the amount of $9,550.00, were made by William.

On 3 May 1978 Minnie died intestate leaving two surviving children, William and Doris. They were appointed personal representatives of Minnie's estate. William subsequently tendered the remaining payments on the contract for deed to Minnie's estate, but Doris, as one of the personal representatives, refused to join in a conveyance of the real property to William.

William commenced the present lawsuit and sought specific performance under the contract for deed.[1] Doris filed an amended answer which, in substance, admitted the making of the contract for deed but raised the affirmative defense of fraud and deceit in its procurement. The factual basis for the fraud and deceit allegedly consisted of the following:

(1) Inadequate consideration from one in a close and confidential relationship with the seller;

(2) The down payment was never paid but was, instead, the amount due on the purchase of farm machinery; and

(3) The seller was unaware of the inadequacy of the purchase price and executed the agreement as a result of a mistake in fact, induced by William.

After each side presented evidence, the following dialogue transpired:

"MR. SPERRY: Your Honor, since the defendant has rested, the plaintiff wishes to move for a judgment on the pleadings and on the record. . . .

.    .    .    .    .

"THE COURT: Any response, Mr. Chapman?

"MR. CHAPMAN: We resist the motion. I think in that connection that whatever the state of the record may be, if the plaintiff is not going to introduce any more testimony that this requires some explanation of the law, which I would rather give in writing than orally. I do have some authority that I want to call the Court's attention to, so I would like to resist the motion and I would like the opportunity at the appropriate time to request the opportunity to present written briefs on the subject."

After some further discussion not relevant to the issues on this appeal, the court, in effect, denied Doris the opportunity to submit written briefs and rendered an oral decision from the bench which, in substance, found that William had established a prima facie case that the contract for deed was valid and that Doris had failed to establish undue influence or fraud in the procurement of the contract for deed.

Additionally, the district court found that the land was conveyed for "somewhat less

1. See Ch. 32–04, NDCC.

than the fair market value." However, the district court found there was no undue influence in the relationship between William and Minnie. The district court also found no evidence of incompetence on the part of Minnie.

Thereafter, the following discussion ensued:

"MR. CHAPMAN: Yes. I had thought the Court would give me some chance to brief this matter, so I didn't indicate my authorities. I want to indicate to the Court for the record so that the Court is aware of why we feel that we do have a case, if I may just indicate, even though the Court has made up its mind, I think I would like the record to show what we are proceeding under.

"THE COURT: All right.

"MR. CHAPMAN: The law with regard to fraud and deceit under Rule 37 of Am.Jur. at page 601, Fraud and Deceit, Section 441 provides the fact that one in whom confidence is reposed by another obtains an apparent advantage over the latter in a transaction between them is a vital factor in raising the presumption of fraud on the part of a fiduciary or one in a confidential relationship. Moreover, the unfairness of a transaction or inadequacy of the consideration is in itself a factor from which fraud can be inferred and such inference will operate along with other evidence to support a finding of fraud.

Now, we have in that connection a North Dakota case, the case of Adams versus Little Missouri Minerals Association, 143 Northwest Second.

"MR. SPERRY: Your Honor, we object to that procedure. All of that law was cited in the briefs a long time ago and the court has made its decision. We think it's the wrong time to be making that kind of an argument. We can carry on that way all afternoon.

"THE COURT: The Court will allow you to submit any delayed brief as you care to submit, Mr. Chapman. The Court believes it's taken all of those matters you cited into consideration. Additional-

ly, I do not believe that there has been any establishment of any unusual closeness of the relationship. There is no showing where this woman lived, how she lived, that she was subjected to the influence of this gentleman at any particular hours or times.

The record is totally devoid of any unusual circumstances other than the mere fact that he was the son. To account for that, I will allow you to reduce that to writing and submit it to the Court as your legal argument in this case, but I do believe that you have cited those previously in the motion for summary judgment that was presented to Judge Stuart, did you not?

"MR. CHAPMAN: No. No, it isn't, Your Honor, but I won't put in a delayed brief when the Court has ruled. I merely wanted this record to show that I believe that we should have the opportunity to present our authorities before the Court's ruling on a case of this kind and—

"THE COURT: I believe you would have had the right to argument.

"MR. CHAPMAN: Well, the only thing is, Your Honor, I asked for opportunity to submit a written brief and—

"THE COURT: Before denying it I should have told you that and let you argue it orally, I agree. You may proceed, counsel."

Thereafter, counsel for Doris proceeded with further oral arguments which did not alter the district court's decision and judgment was entered. Doris appealed from that judgment.

The overriding issue raised by Doris is that the trial court erred in not permitting the parties to present their respective positions as to the law applicable to the case prior to the trial court's oral decision. Intertwined with this issue is the contention by Doris that the trial court did not understand her legal theory of the case at the time of its oral decision and that its decision was predicated upon a misconception of the law. Doris asserts the facts presented by this case gave rise to a presumption against the validity of the transaction between Min-

nie and William and further shifted the burden to William to show the fairness, honesty and integrity of the transaction. In particular, Doris asserts the facts of the case establish there was an inadequacy of consideration, coupled with the dominant person (William) in a confidential relationship (parent and child) receiving the property.

■ With respect to the contention that the trial court erred in not affording the parties an opportunity to argue their cases prior to the court's decision, in *Herring v. New York*, 422 U.S. 853, 95 S.Ct. 2550, 45 L.Ed.2d 593 (1975), the United States Supreme Court held that a statute which empowers a trial judge with a discretion to deny *totally* the opportunity for closing argument in a criminal case was unconstitutional. However the court pointed out that a trial judge should be given great latitude in controlling the duration and limiting the scope of closing arguments. For instance, a trial judge may limit counsel to a reasonable time for argument and may terminate argument when a continuation would be repetitive or redundant.

In *Fuhrman v. Fuhrman*, 254 N.W.2d 97, 101 (N.D.1977), we said:

"We now hold that litigants in civil nonjury cases (and, of course, in all criminal and jury cases as well) have a right to have their attorneys make a final argument. This right may be limited as to content so as to preclude improper argument, but it cannot be totally denied. In civil nonjury cases, the right may be waived."

■ In an earlier criminal case, *State v. Weippert*, 237 N.W.2d 1, 6 (N.D.1975), we affirmed a criminal conviction because the record did not "disclose that ... a request [for closing argument] was made or denied or the opportunity to make a final argument was not afforded defense counsel." See also, *Estraviz v. State*, 366 So.2d 803 (Fla.App.1979). (Defendant must have tendered and then have been refused the right to make an argument.) The right to make final argument is no greater in a civil case than it is in a criminal case. See, *Fuhrman v. Fuhrman, supra* (statements from a criminal case regarding oral argument are equally applicable to civil cases).

■ In this instance the record does not reflect that counsel requested to make a final argument prior to the court's oral decision. The record suggests that counsel requested to file written briefs and that this request was effectively denied when the court rendered its oral decision. However, counsel was permitted to present oral argument after the court rendered its oral decision. Additionally, counsel was given an opportunity to file delayed briefs but did not take advantage of the opportunity. Nevertheless, Doris asserts her post-decision argument and the court's reaffirmation of its previous ruling did not cure the fact that she was not given the opportunity to present final argument prior to the court's decision. She also asserts that a delayed brief would not have cured the alleged error.

Although we do not necessarily encourage the sequence depicted by the factual circumstances of this case, we do not believe these circumstances reflect a total denial of the opportunity to present final argument. We also believe that whenever additional facts or points of law are raised or presented in a subsequent argument or brief, the trial court, as part of its judicial function, can reconsider and, if necessary, recant a previously rendered decision which was based upon an erroneous concept of law. To arrive at a different conclusion would necessarily require us, on review, to enter into the intricate realm of the judicial decision-making process involving speculation concerning the individual characteristics and personalities of individual judges. In the instant case the judge's statements or observations after the formal presentation of evidence can be characterized as his findings of fact, or a mixture of findings of fact and law. In fact, in some instances, the decision-making process may benefit or be improved if the judge first informs counsel of his findings of fact and impressions of law and then allows counsel to present arguments thereafter. Be that as it may, we

are not implying a preference for either sequence for final argument. However, based on the factual situation presented in this instance, we do not believe there was a total denial of the right to present final argument amounting to a denial of due process.

Furthermore, based on the comments made to the trial court by counsel after the decision was rendered, and the authorities cited in her brief to this court on appeal, we do not believe the trial court misapplied the law to the factual situation presented.

The thrust of Doris's argument after the court's oral decision and in her brief to this court was that the facts presented by the case raised a presumption against the validity of the transaction between Minnie and William and shifted the burden to William to show the fairness, honesty and integrity of the transaction. In support thereof she cited 37 Am.Jur.2d, Fraud and Deceit, §§ 438 and 441; 59 Am.Jur.2d, Parent and Child, §§ 144 and 146.

Doris asserts that in this instance several factors gave rise to this presumption.[2] Among these factors were that the consideration paid by William for the land was inadequate;[3] that Minnie believed that she was getting $25.00 per acre for the land; and that prior to the execution of the contract for deed Minnie had suffered a heart attack and was easily persuaded by William, who was the dominant person in a confidential relationship between mother and son.

In particular Doris calls our attention to the following passage from 59 Am.Jur.2d, Parent and Child, § 146, p. 247:

"Therefore, where facts are shown, other than the mere relation of parent and child, establishing between the parties a confidential relation in which the child is the dominant party, a conveyance from the parent to the child is presumed to be tainted with undue influence, and the burden is upon the child to show the bona fides of the transaction.[15] . . .

. . . . .

"[15] *Hensan v. Cooksey*, 237 Ill. 620, 86 N.E. 1107; *Smith v. Smith*, 84 Kan. 242, 114 P. 245; *Highberger v. Stiffler*, 21 Md. 338; *Soper v. Cisco*, 85 N.J.Eq. 165, 95 A. 1016; *Weitz v. Moulden*, 109 Okl. 119, 234 P. 583; *Gilliam v. Schoen*, 176 Or. 356, 157 P.2d 682; *Baldwin v. Birchby* (Wyo.) 346 P.2d 278 (rule recognized). . . ."

■■ Our review of the cases cited in the footnote to that excerpt leads us to conclude that the principle of law enunciated therein has no application to the factual situation presented in the instant case. These cases stand for the proposition that in order for a presumption of undue influence to become operative which shifts the burden of proof, a confidential or fiduciary relationship must first be established. A presumption, unlike an inference, is created by either legislative enactment or case law, whereas an inference is a permissive deduction. *Matter of Estate of Wagner*, 265 N.W.2d 459 (N.D.1978). To make a presumption operative, evidence must be presented either to establish the necessary facts or from which a proper inference may be deducted. Doris did not present facts needed to make her contended presumption operative.

■ Inferences are drawn by the finder of facts. Neither party may impose upon or compel the finder of facts to draw a certain inference. Furthermore, the mere relationship of parent and child, in and of itself, does not establish such a confidential

---

**2.** A presumption is a deduction directed by law, whereas an inference is a permissive deduction. For further discussion, see *Matter of Estate of Wagner*, 265 N.W.2d 459, 463 (N.D.1978).

**3.** Much of the testimony at trial was devoted to this question. Doris points out that Minnie's 1966 Federal Income Tax return reflects that she received $2,188.00 for farm machinery, and Minnie's other records do not reflect receipt of another check for $2,188.00. Thus Doris asserts that the $2,188.00 was not for the down payment on the contract for deed, but rather for the farm machinery.

Assuming the check was not for the down payment, the price per acre for the land would be $15.00. If the check was for the down payment, the price per acre would be $17.735 per acre.

or fiduciary relationship. 59 Am.Jur.2d Parent and Child, § 145.

■ A review of the district court's oral decision reflects findings which do not support the threshhold requirement of a confidential or fiduciary relationship between William and Minnie. The district court determined that no unusual closeness had been established in the relationship between William and Minnie. Although the district court found the amount paid under the contract for deed was "somewhat less than the fair value," that in and of itself does not raise a presumption against the transaction. Inadequacy of consideration is one of the factors from which fraud may be inferred, but other factors must also be considered before the inference of fraud can be drawn. The district court also determined that there was no evidence of incompetence on behalf of Minnie or that she was easily persuaded. Neither did the district court find any undue influence in the relationship between William and Minnie.[4] After a careful review of the record, we cannot say that pursuant to Rule 52(a), NDRCivP, these findings are clearly erroneous, and we conclude that the district court properly applied the law to the facts presented.

■ In a related issue Doris asserts that she was precluded from presenting evidence on certain matters, including the nature of the relationship between Minnie and William. In her attempt to establish a confidential relationship between Minnie and William, Doris was precluded from testifying regarding conversations between William and Minnie because of a lack of foundation for those conversations. The record reflects that Doris was not present at any of the alleged conversations. Thus, the objection based upon improper foundation was properly sustained. No offer of proof was made.

Doris asserts that she could not establish a confidential relationship between William and Minnie because by the nature of a confidential relationship she would not be

present at any of the conversations or consultations. Doris also asserts that the relationship could not be established through William's testimony because of his "selective memory" of facts favorable to him. However, this question can be resolved by pointing out that the trial court could observe William's demeanor while testifying and either believe or discredit his testimony, and draw appropriate inferences on his relationship with Minnie from that testimony. The district court did observe William's testimony on this question and determined that there was no confidential relationship between William and Minnie. Because we must give credence to the trial court's opportunity to observe the witness's demeanor, we cannot say that this finding by the trial court is clearly erroneous. Rule 52(a), NDRCivP.

Based on the foregoing, the decision of the district court is affirmed.

ERICKSTAD, C. J., and VANDE WALLE, PAULSON and PEDERSON, JJ., concur.

---

**4.** "The law does not condemn all influence, only undue influence." *Matter of Estate of*

*Wagner,* 265 N.W.2d 459, 464 (N.D.1978).